351 So.2d 802 (1977)
Harold KILBOURNE, Plaintiff-Appellee,
v.
Leonard ARMSTRONG, d/b/a Armstrong Texaco Service, Defendant-Appellant.
No. 11494.
Court of Appeal of Louisiana, First Circuit.
October 17, 1977.
*803 Andrew J. Bennett, Jr., Jimmie L. Moss, Baton Rouge, of counsel for plaintiff-appellee Harold Kilbourne.
A. Clay Pierce, Jr., Baton Rouge, of counsel for defendant-appellant Leonard Armstrong doing business as Armstrong Texaco Service.
Before LANDRY, SARTAIN and ELLIS, JJ.
SARTAIN, Judge.
This is a workmen's compensation action (under the new provisions of R.S. 23:1221, as amended by Act 583 of 1975) involving the question of whether the plaintiff has a total permanent disability and whether the defendant discontinued compensation payments arbitrarily, capriciously, or without just cause, thereby entitling plaintiff to penalties and attorney's fees.
Defendant appeals from a judgment awarding plaintiff benefits for total permanent disability, penalties and attorney's fees. We amend as to permanent disability, the imposition of penalties as to future payments, and otherwise affirm.
*804 The facts as to plaintiff's employment, wages, the accident and injuries are not in dispute. He was employed by Leonard Armstrong, d/b/a Armstrong Texaco Service (defendant) as a filling station attendantmechanic at a weekly wage of $150.00. On September 5, 1975, plaintiff was repairing a tire when it exploded, severely injuring his right wrist. His injuries were medically described as a comminuted fracture of both the radius and the ulna. Despite medical treatment, non-union of the fracture site still exists. His treating orthopedic specialist recommended amputation of the right hand at the wrist and the use of an artificial limb. Plaintiff declined. Any type of bone graft or total wrist replacement is impractical.
The evidence further reflects that plaintiff has no technical training and only a third grade education. He has not sought any other type of employment since the accident. For all practical purposes he is to be considered as a one-handed worker, for with the exception of the injured hand, he is otherwise healthy. He maintains some degree of stability of the right wrist only with the use of a leather cast which he must wear constantly.
Counsel for plaintiff argues that because of plaintiff's limited education and training there are very few jobs for which he is suited, such as an attendant, watchman, edger, or those types of jobs which can be performed with only one hand. It is submitted that plaintiff will become a ward of the state if his disability is not determined to be total and permanent.
Counsel for defendant, on the other hand, argues that there are many tasks plaintiff can perform, albeit with one hand, and he is therefore capable of gainful employment and is not totally and permanently disabled under the new amendment.
This is only the second occasion in which we have had an opportunity to review and apply compensation benefits under the new act. In LeBlanc v. Commercial Union Assurance Co., 349 So.2d 1283 (1977), Judge Landry, speaking for another panel of this court, stated:
"Prior to the 1975 amendment, our Workmen's Compensation Law LSA-R.S. 23:1221(1)(2) and (3) defined temporary total, permanent total and partial disability and fixed the benefits therefor as follows:
"`(1) For injury producing temporary total disability to do work of any reasonable character, sixty-five per centum of wages during the period of disability, not beyond three hundred weeks.
"`(2) For injury producing permanent total disability to do work of any reasonable character, sixty-five per centum of wages during the period of disability, not beyond four hundred weeks.
"`(3) For injury producing partial disability to do work of any reasonable character, sixty-five per centum of the difference between wages at the time of injury and wages which the injured employee is able to earn thereafter during the period of disability, not beyond three hundred weeks.'
"As amended by Act 583 of 1975, the above mentioned statutory provisions now provide in pertinent part:
"`(1) For injury producing temporary total disability of an employee to engage in any gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds per centum of wages during the period of such disability.
"`(2) For injury producing permanent total disability of an employee to engage in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether *805 or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds per centum of wages during the period of such disability.
"`(3) For injury producing partial disability of the employee to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience, sixty-six and two-thirds per centum of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, during the period of disability, but not beyond a maximum of four hundred weeks for such partial disability resulting from injury occurring on and after September 1, 1975, and on or before August 31, 1976.' (Emphasis by the court.)
"It appears the 1975 amendment has made a significant change in the statutory definition of temporary total and permanent total disability. We find that amended Section 1221(1) and (2), above, define total disability, whether temporary or permanent, to mean disability to engage in any gainful occupation whether or not the same or one similar to that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee was fitted at the time of the injury, either by education, training or experience. We understand the definitions to mean that an employee is not totally disabled, either temporarily or permanently, unless he is disabled from performing any gainful work whatsoever. We so find because the amended statute employs the phrase `disability . . . to engage in any gainful occupation for wages . . . .' We readily perceive problems in interpreting the present statutory definition of total disability. We find this a matter of no moment, however, insofar as concerns the case at hand because we find plaintiff in this instance was partially disabled for reasons hereinafter set forth.
"Section 1221(3), above, as amended in 1975, defines partial disability as partial disability to perform the duties in which the employee was customarily engaged when injured or duties of the same or similar character, nature or description for which he was fitted by education, training and experience. We interpret the definition of partial disability to mean that if an injured employee is unable to perform his usual or customary occupation, but can engage in some other gainful employment for which he is fitted by education, training or experience, he is only partially disabled." (Emphasis added)
"It appears the amended statutory definition of partial disability is substantially the same as total disability, as the latter term was judicially interpreted prior to the 1975 amendment. Under prior jurisprudence, an employee was considered totally disabled when he could not perform work of the same or similar description in which he was engaged when injured, notwithstanding his ability to earn the same or higher wages in a different line of endeavor. Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695 (1952); Morgan v. American Bitumuls Co., 217 La. 968, 47 So.2d 739 (1950)."
A short comparison of the old and new statutes might be helpful. Both statutes refer to temporary total [R.S.23:1221(1)], permanent total [R.S.23:1221(2)], and partial disability [R.S.23:1221(3)]. We are here concerned only with the latter two classifications. Under *806 the prior statute a worker was deemed to be totally and permanently disabled when his injuries prevented him from performing work of a same or similar nature. Subsequent earnings by the worker were immaterial. Wright v. National Surety Corp., above. Now, under the new statute, for a worker to be permanently and totally disabled he must be unable to "engage in any gainful occupation for wages." Subsequent wages are now material in that if he is able to engage in any type of gainful employment, not necessarily of the same or similar nature, and if his injuries are permanent, we now deem him to be partially disabled and his compensation is to be computed at sixty-five percent of the difference between his prior (higher) wages and his subsequent (lower) earnings not to exceed four hundred weeks.
We are not unmindful of the problems that may arise in the application of the present statutory definition of "partial disability" where the injured worker has not undertaken subsequent employment and the percentage difference between his prior and subsequent wages cannot be applied.
An injured worker's failure to obtain subsequent employment may be based on sound medical reasons or, conversely, his arbitrary decision to continue to receive compensation benefits in lieu of gainful employment. This particular issue, when it arises, is one of fact to be determined by the trial judge. It suffices here to say that in the instant cause we do not find that the plaintiff's failure to seek subsequent employment so as to reduce defendant's liability is unreasonable. Future cases will have to determine the circumstances under which a claimant's failure to seek gainful employment following an injury will militate against an employer's-insurer's obligation to pay the maximum weekly benefit. The present judgment, as any other judgment in a workmen's compensation suit, may be reviewed and an appropriate modification made on application to the district court in accordance with R.S. 23:1331.
Accordingly, we do not find that the plaintiff is totally and permanently disabled within the intent of R.S. 23:1221(2) and hold that he is partially disabled within the intent of R.S. 23:1221(3).
We now turn to the question of penalties and attorney's fees.
At the time the payments were discontinued, Armstrong had been informed by the plaintiff that he was still under a doctor's care and had not been released to return to work. Defendant discontinued the payments because he believed plaintiff was able to return to work. He had seen plaintiff change the oil in an automobile and had also seen plaintiff under an automobile with another man. In such a situation defendant should not have ceased payments without making further inquiry and getting a medical opinion. Adams v. Travelers Insurance Co., 345 So.2d 987 (La.App. 2d Cir. 1977); Barham v. Mathieu, 198 So.2d 145 (La.App. 1st Cir. 1967). Such inquiry would have shown that plaintiff was not engaged in physical labor under the car but was only instructing the other man and that plaintiff had indeed not been released to return to work or to such other employment.
The trial court determined that the discontinuance of payments was arbitrary and capricious. This is at least in part a factual determination and should not be disturbed unless manifestly erroneous. Stubbs v. Parish of East Baton Rouge, 343 So.2d 258 (La.App. 1st Cir. 1977). The determination here was certainly not manifestly erroneous.
The lower court awarded penalties and attorney's fees based on both past and future payments. This is incorrect as to future payments. The intent of R.S. 23:1201.2 is to require the employer to pay penalties and attorney's fees on overdue sums. Future payments are not overdue. If they are timely made, penalties and attorney's fees cannot be added to them. See Costa v. Wembley Industries, Inc., 346 So.2d 282 (La.App. 4th Cir. 1977) and Dupre v. Sterling Plate Glass & Paint Co., Inc., 344 So.2d 1060 (La.App. 1st Cir. 1977) where penalties and attorney's fees were awarded only on overdue payments.
*807 For the above reasons, the judgment of the district court is amended to decree that plaintiff is entitled to workmen's compensation benefits for partial disability [R.S.23:1221(3)], subject to a credit in favor of defendant for compensation payments previously paid and for statutory penalties of twelve percent on all past due payments, together with attorney's fees in accordance with the judgment of the district court. All costs in these proceedings are assessed against defendant.
AMENDED, AND AS AMENDED, AFFIRMED.