370 So.2d 212 (1979)
Carey L. McBROOM, Plaintiff-Appellant,
v.
ARGONAUT INSURANCE COMPANY et al., Defendants-Appellees.
No. 6918.
Court of Appeal of Louisiana, Third Circuit.
April 11, 1979.
Writ Refused June 11, 1979.
*213 Broussard, Bolton & Halcomb, Daniel E. Broussard, Jr., Alexandria, for plaintiff-appellant.
Gold, Little, Simon, Weems & Bruser, Eugene J. Sues, Alexandria, for defendants-appellees.
Before DOMENGEAUX, SWIFT and DOUCET, JJ.
DOMENGEAUX, Judge.
This is a suit for workmen's compensation benefits filed by Carey L. McBroom, the employee, against Glen D. Loe, d/b/a Glen Loe Drilling Company, the employer, and his workmen's compensation insurer, Argonaut Insurance Company. The essential issue presented on appeal is whether the trial court erred in holding plaintiff not entitled *214 to recover compensation benefits for a permanent partial disability.
Both parties have stipulated to the fact that plaintiff was injured while in the course and scope of his employment as a roustabout with the Glen Loe Drilling Company in LaSalle Parish, on June 17, 1976. The evidence indicates that when plaintiff and his crew were tightening a winch mechanism, his right hand became caught in a cable, thereby crushing his ring and little fingers.
The insurer paid compensation benefits of $85.00 per week from the time of the accident until July of 1976, at which time benefits were terminated. The insurer also paid medical expenses in the amount of $2,563.82.
After the termination of benefits, plaintiff filed this suit on April 5, 1978, in order to recover benefits for total and permanent disability and for penalties and attorney's fees. After trial, the trial judge found that plaintiff was suffering from a percent loss of function of the right hand. Since defendants had already paid the amount of benefits due under La.R.S. 23:1221(4), judgment was rendered in favor of defendants, rejecting plaintiff's demands. Plaintiff appeals.
On appeal plaintiff contends that the evidence shows that he is unable to return to his former position as a roustabout and that he should be found partially disabled under La.R.S. 23:1221(3). He also reiterates his demand for penalties and attorney's fees.
Under the amended provisions of La. R.S. 23:1221, relative to disabilities, an injured employee is totally disabled, either permanently or temporarily, only if he is incapable of returning to any type of gainful employment whatsoever, or although capable, he is unable to return to any type of gainful employment because of substantial pain. Simmons v. Louisiana Department of Transportation and Development, 368 So.2d 770 (La.App. 2nd Cir. 1979); Rachal v. Highlands Insurance Company, 355 So.2d 1355 (La.App. 3rd Cir. 1978), writ denied 358 So.2d 645 (La.1978); Phillips v. Dresser Engineering Company, 351 So.2d 304 (La. App. 3rd Cir. 1977), writ denied 353 So.2d 1048 (La.1978); Kilbourne v. Armstrong, 351 So.2d 802 (La.App. 1st Cir. 1977); Leblanc v. Commercial Union Assurance Company, 349 So.2d 1283 (La.App. 1st Cir. 1977), writ denied 351 So.2d 174 (La.1977).
On the other hand, if an injured workman cannot return to his former employment because of his injury, but can perform gainful work in another position, he is partially disabled. Kilbourne v. Armstrong, supra; Leblanc v. Commercial Union Assurance Company, supra. Partial disability also includes the situation where a workman would experience substantial pain when working in his former occupation, but where he could work in other categories of jobs without experiencing such pain. Conlay v. Houston General Insurance Company, 370 So.2d 196 (La.App. 3rd Cir. 1979); Lachney v. Cabot Corporation, 368 So.2d 500 (La.App. 3rd Cir. 1979).
In the instant case, plaintiff bases his argument for partial disability on both the physical inability to return to work as a roustabout and the inability to return to work as a roustabout without experiencing substantial pain.
At the outset, we repeat what has been stated many times previously. Physical inability to return to work and inability to return to work because of substantial pain are questions of fact. A determination of fact will not be disturbed when there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's findings, unless such findings are clearly wrong. Crump v. Hartford Accident & Indemnity Company, 367 So.2d 300 (La.1979); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The reason for this rule of appellate review relates to both the application of trial and appellate functions and to the trial court's better capacity to evaluate live witnesses. As we stated in Conlay v. Houston General Insurance Company, supra:

*215 "The trial court's favored position in seeing and hearing live witnesses is especially important when the factual determination involves a concept as subjective as pain. Colorful inflections and subtle nuances given to spoken and physical expressions describing the degree of pain simply do not come out in the black and white transcription of testimony contained in the appellate record."
We now turn to the specific evidence of this case.
Immediately following the accident, plaintiff was brought to a hospital in Urania, Louisiana, where he was seen by Dr. B. D. Doughty. After going to Doctor Doughty on several occasions, plaintiff decided to consult an orthopedist. He went to see Dr. R. J. Beurlot in Alexandria, Louisiana, who referred plaintiff to a hand specialist, Dr. Daniel C. Riordan, of New Orleans, Louisiana.
Doctor Riordan, who testified by way of deposition, described plaintiff's condition as a flexion contracture of the ring and little fingers of the right hand. He explained that this condition was a result of a loss of skin on these fingers. When the fingers healed, the skin was short, and, as a consequence, the fingers could not be straightened. In addition, the nerves in the little finger were not functioning, and this resulted in atrophy of the finger. There was also diminished sensation in the ring finger.
To help rectify the situation, Doctor Riordan recommended a two stage surgical procedure. In the first stage, the little finger would be partially amputated, but the skin from the dorsal side (fingernail side) would be retained and sutured to the volar side (palm side) of the ring finger. After approximately three weeks, the second stage would be undertaken, in which the grafted skin would be detached from the little finger so that it would be attached completely to the ring finger.
Plaintiff undertook this surgery in January and February of 1977. In March of 1977, Doctor Riordan released plaintiff from his care. At that time, Doctor Riordan assigned a disability of fifteen percent to plaintiff's right hand, which was based upon the fact that his little finger was amputated, and that there was a sensory loss and limitation in extension of the ring finger.
In January of 1978, Doctor Riordan re-examined plaintiff at the request of plaintiff's counsel. At that time, the doctor discovered that plaintiff lost an additional range of motion in his ring finger, which he attributed to lack of exercise, and he re-assessed plaintiff's disability in the hand from fifteen to eighteen percent.
Doctor Riordan was firm and unwavering in his opinion that plaintiff could return to his work as a roustabout. With regard to pain, the doctor stated that if plaintiff was experiencing pain, it was of limited intensity. He based this conclusion upon the fact that the area of the ring finger which plaintiff alleged was producing pain consisted of a portion of the grafted skin and that, consequently, it had a less than normal sensation. He thought that the sensory response in this area was insufficient to cause pain which would be disabling or which would prevent a roustabout from performing his duties.
Plaintiff testified that he worked intermittently since he left Doctor Riordan's care. He stated that he initially returned to work as a roustabout for his former employer, but that most of his work at that time was on the ground and did not require him to climb, nor did his work involve the ordinary heavy labor generally expected of a roustabout. Plaintiff said that during his periods of employment with the drilling company, he had complained of pain and of an inability to do the job to his father, L. C. McBroom, a "pusher" of the roustabout crew. He further testified that he left his employment after a short period of time, when it became apparent to him that he would be unable to perform adequately in his job. He admitted that he also had been employed with the Louisiana Pacific Company as a "grader" after the accident. However, he explained that he had to quit that position because it required him to grip plywood sheets which emerged from a machine. *216 According to plaintiff, this exercise caused a cramp in his hand.
George McBroom, plaintiff's brother and a co-worker of plaintiff, also testified. He stated that plaintiff was unable to perform the duties of a roustabout after his accident because, as a result of his injuries, he was unable to grab or hold onto anything. Plaintiff's father, L. C. McBroom, was also used as a witness. He indicated that plaintiff complained constantly about his hand and that he was unable to adequately perform his duties as a roustabout. Another witness, Michael Williams, also a "pusher" for the roustabout crew, testified that plaintiff seemed to be performing his duties slowly, a fact which Williams attributed to the condition of plaintiff's hand. However, he also stated that plaintiff had no trouble in performing the duties of a roustabout and had made no complaints of experiencing pain while performing his customary duties.
The defendant sought to use the testimony of two lay witnesses at trial, however, after objection, their testimony was taken only under a proffer of proof. In his written reasons, the trial judge specifically stated that these witnesses did not contribute anything of significance to the case. In view of this, as well as the decision reached below, it is unnecessary to discuss the admissibility or significance of their testimony.
After our careful consideration of the evidence in this case, we fail to find error on the part of the trial court in holding that plaintiff failed to prove a partial disability. In his very thorough written reasons, the trial judge carefully discussed the testimony of each of the witnesses. Only after consideration of both the lay and medical testimony, did he conclude that the lay testimony in this case simply did not outweigh the medical testimony. He was correct in considering the lay and medical testimony together, and he was not in error by attaching more significance to the medical than lay testimony within the context of this case. Tantillo v. Liberty Mutual Insurance Company, 315 So.2d 743 (La.1975).
Since plaintiff has received the maximum benefits to which he is entitled for his percent impairment of his right hand, the insurer was justified in terminating benefits when it did. Accordingly, the claim for penalties and attorney's fees is without merit.
For the above reasons, the judgment of the District Court is affirmed at appellant's costs.
AFFIRMED.