379 So.2d 46 (1979)
D. G. MAYES, Plaintiff-Appellant,
v.
LOUISIANA-PACIFIC CORPORATION, Defendant-Appellee.
No. 7220.
Court of Appeal of Louisiana, Third Circuit.
December 19, 1979.
Rehearing Denied February 4, 1980.
Writ Refused March 21, 1980.
*47 McKeithen, Burns & Wilkins, Paul Wilkins and Andre P. Guichard, Columbia, for plaintiff-appellant.
Gaharen & Wilson, Joseph Wilson and Paul Boudreaux, Jr., Jena, for defendant-appellee.
Before CUTRER, STOKER, WARE,[*] JJ.
STOKER, Judge.
This is a workmen's compensation case. The plaintiff-appellant, D. G. Mayes, appeals from a judgment of the trial court denying his claim for total and permanent disability under LSA-R.S. 23:1221(2). In the alternative that he be found not to be totally and permanently disabled, plaintiff-appellant seeks compensation for permanent partial disability under LSA-R.S. 23:1221(3). In the further alternative, appellant contends, in the event he be found not to be totally or partially disabled, that he should be awarded benefits under LSA-R.S. 23:1221(4), the specific injury schedule. The first schedule benefit claimed as an alternative is under subparagraph (p) for *48 loss of a physical function, the inability to move his head and neck in a full range. LSA-R.S. 23:1221(4)(p). The second is under subparagraph (e) and (f) based on limitations resulting from injury to his hand and wrist. LSA-R.S. 23:1221(4)(e) and (f).
The trial court articulately stated the facts of the case in its written reasons for judgment and set forth its conclusions and opinion to support its judgment which denied compensation in any form. We set forth in full the trial court's reasons and adopt its statement of facts. We arrive at different conclusions as to the interpretation of law to be applied and therefore reverse. The trial court's reasons for judgment are as follows:

REASONS FOR JUDGMENT
This is a workmen's compensation case resulting from an accident on November 2, 1975. The plaintiff, D. G. Mayes, contends the accident caused him to become totally and permanently disabled while the defendant, Louisiana Pacific Corporation, claims he fully recovered from his injury. I conclude that while he has not fully recovered, he is not entitled to additional benefits.
Plaintiff was a Class A millwright when injured. He explained that this involved repair and maintenance of a wide variety of machinery and equipment at defendant's plywood plant in Urania, Lousiana. He regularly used hand tools in this trade, including wrenches, hammers and cutting torches. He had some training as a welder, but was not certified as such. He had been working for 48 or 49 years. During most of this time he was a carpenter or millwright for the various timber companies that owned the Urania facilities. He had a ninth grade education.
On November 2, 1975, plaintiff and several other millwrights were called upon to repair a torn belt on an overhead conveyor used to move wood chips, sawdust and scrap material. To accomplish this, they shut down the conveyor and plaintiff was lifted up in a basket to a height that would allow him to reach the belt. Two other men pulled the belt until the ends joined and plaintiff was stitching the belt. He had some of the string he was using to sew with wrapped around three or four fingers of his right hand. While plaintiff was bent over the belt sewing, someone out of sight of the repair crew threw an electrical switch starting the belt. Plaintiff was jerked out of the basket and thrown to the floor. It seems he fell about 15 feet and struck his head on something on the way down. He was rendered unconscious and landed on his head and right shoulder. He woke up in a nearby hospital as a nurse was cutting off his shirt.
The accident caused plaintiff to break his right wrist and tore skin and nails from his fingers. He had a scalp laceration and a cerebral concussion. He had lacerations on his right thigh and tenderness in the right scapular region. He had abrasions on his left heel and left arm. He suffered a fracture through the left transverse process of the seventh cervical vertebrae. He complained of severe pain in his right shoulder. He was hospitalized under the care of Dr. T. E. Tannehill from November 2nd until November 14th. Dr. Tannehill saw plaintiff as an outpatient on November 20th and 26th and on December 4th, 12th, 19th, and April 30th and May 3rd or 7th of 1976.
On release from the hospital plaintiff was still wearing a cast on his right arm and a soft collar on his neck. He returned to work in that condition on December 10, 1975. He was told to teach the younger millwrights what he knew about the plant and its equipment and he remained on light duty. He wore the cast about six weeks and wore the collar for a shorter period. Exactly when he resumed his regular duties or got off light duty status is not clear.
The plant maintenance supervisor, Ruffin Scoggins (the transcript is in error concerning his name) testified that Mr. Mayes ultimately did all that he was expected to do as a Class A millwright. Mr.

*49 Mayes denied this, asserting instead that after the accident he did little more than tell the other men what to do and how to do it. Mr. Scoggins said he was not promoted to foreman or supervisor. Mayes said his primary problem was that he could not use his right hand as well as he did before the accident. (See pages 15 and 16 of transcript.) He also said he had and still has difficulty turning his head. He continued in defendant's employment until he reached mandatory retirement at Sixty-Five on September 22, 1976.
In all, plaintiff was seen by three doctors. Dr. Tannehill saw him first and most often. He is a general practitioner. Then he saw Dr. R. J. Beurlot of Alexandria who is an orthopaedic surgeon. Dr. Beurlot examined plaintiff on May 14, 1976. He also saw Dr. Baer Rambach of Shreveport who is also an orthopaedic surgeon, on March 13, 1977, and in November of 1978.
Dr. Tannehill testified he believes that plaintiff can do all he was doing before the accident. It is clear from his testimony he considered plaintiff's return to the plant as indicative of ability to do all he was doing before being injured. It is also clear from his testimony that plaintiff continued to complain of shoulder and wrist difficulties into May of 1976 because Dr. Tannehill continued to take X-Rays which did not indicate any problems. It is significant that in May of 1976 Dr. Beurlot found continued limited motion in movement of the head and neck and plaintiff's continued inability to close his right fist. Dr. Rambach's findings were fairly consistent with the earlier findings concerning the neck and wrist limitations, which he believed were more persistent than the other doctors had anticipated. He concluded from his findings the plaintiff had suffered a severe muscle strain in the cervical region that was still partially disabling him. He also concluded that the accident aggravated a pre-existing degenerative arthritic condition and that hammering with the right wrist could not be accomplished without pain.
This Court finds that Mr. Mayes was injured in a compensable accident as alleged. Further, this Court finds that the trauma to plaintiff's shoulder and cervical region has caused permanent partial limitation of his ability to move his head and neck and some chronic aggravation of pre-existing degenerative arthritis. The wrist fracture, while healed, caused a persistent inability to use hand tools in a regular consistent manner during regular employment without pain and it caused an inability to completely close the right hand. All of these residual problems combined with the circumstances of plaintiff's age and education make it reasonably certain plaintiff cannot do the carpentry work that he expected to do after retirement and there are probably some duties as a millwright that he cannot perform. The evidence before me convinces me this plaintiff can work as a carpentry foreman and earn $5.00 per hour supervising the work of other carpenters. He did this on two short jobs for wages after his retirement. He did it for a longer period under a barter arrangement with a relative who could do some specialized work on plaintiff's own residence. I also find that the only reason he cannot continue as a millwright for defendant is his age. His after retirement work discussed at length at trial indicates he can do some other work such as supervise carpenters, but he cannot do carpentry work himself.
The fact that plaintiff has retired was argued extensively. It may be that allowing an older employee the same compensation a younger man would get is somewhat unfair. However, such a problem is one for the legislature to remedy. It has been held to be such in Haywood v. Eastern Terminals, 276 So.2d 328 (La. App. 4th Cir. 1973).
A workman in Louisiana who is accidentally injured is considered totally disabled only under two conditions. The first is when the employee cannot perform any gainful work for a wage and *50 the second is when the employee can work, but cannot do so without substantial pain. The employee is partially disabled if the injury compels him to take work outside of the occupational category he was in when injured. LRS 23:1221. When partially disabled, he is entitled to a weekly benefit for no more than four hundred weeks for an injury sustained on November 2, 1975, and then only for two thirds of the difference between what he was earning when injured and what he "actually earns" after returning to work.
While LRS 23:1221(3) uses the language "actually earns", I am of the view it means actually earns or is capable of earning. Otherwise, the choice of whether or not to work would rest solely with the employee and non-accident related factors could become involved, such as the availability of work and age. I believe the plaintiff would like to work, but only if there is employment available in the immediate vicinity of his residence. It is my view he is physically capable of earning $5.00 per hour if he is willing to work in an area where carpenter foremen are in demand. I am not convinced his present lack of employment is caused by this accidentit is caused by his retirement and age.
Plaintiff was paid $364.28 in weekly benefits under LRS [LSA-R.S.] 23:1221(1) for the period between his accident and his return to work, November 2, 1975, through December 10, 1975. All of his medical expenses amounting to $1,256.90 were paid.
For these reasons, judgment will be entered in favor of defendant, Louisiana Pacific Corporation, against plaintiff, D. G. Mayes, rejecting his demands for additional weekly workmen's compensation benefits at his costs.

APPELLANT'S CLAIM FOR TOTAL AND PERMANENT DISABILITY
In urging that he is totally disabled, plaintiff-appellant points to LSA-R.S. 23:1221(2) which requires that in order to recover he be unable to "engage in any gainful occupation for wages." He relies on the holding that, if he can engage in any gainful occupation, but must do so in substantial pain, he is, nevertheless, considered totally and permanently disabled under that section of the Workmen's Compensation Law. Plaintiff-appellant cites the cases of LeBlanc v. Commercial Union Assurance Co., 349 So.2d 1283 (La.App. 1st Cir. 1977), writ denied 351 So.2d 174 (1977); Rachal v. Highlands Insurance Co., 355 So.2d 1355 (La.App. 3rd Cir. 1978); Phillips v. Dresser Engineering Co., 351 So.2d 304 (La.App. 3rd Cir. 1977) and J. D. Armstrong v. Gulf States Fishing and Rental Tools, Inc., 338 So.2d 779 (La.App. 4th Cir. 1976).
The trial court evidently rejected D. G. Mayes' claim that he could not do millwright work without pain. In its reasons for judgment the trial court did recognize that inability to work without substantial pain was a condition which renders a workman totally disabled. Consequently, it is clear that the trial court did not find that D. G. Mayes experienced substantial pain when he did work. Mayes and his wife testified concerning this pain. Their testimony is not particularly specific or graphic and largely expresses their own conclusions rather than objective description. Although Mayes and his wife stated he could not work because of pain, their testimony is not particularly impressive. Certainly the testimony in the cold record is not convincing that working caused Mayes to sustain pain of such quality that it amounted to "substantial" pain. The amount of pain an injured workman experiences is a question of fact. Conlay v. Houston General Insurance Co., 370 So.2d 196 (La.App. 3rd Cir. 1979) and cases cited therein. Under the circumstances, this finding of fact is peculiarly within the province of the trial court, and we are unable to say that the trial court was clearly wrong or committed manifest error in this finding. Hence, we will not disturb the finding. Arceneaux v. Dominque, 365 So.2d 1330 (La.1978); Canter v. Koerhing, 283 So.2d 716 (La.1973); Conlay v. Houston General Insurance Co., supra.
*51 Aside from the question of pain, the record clearly establishes that, subsequent to returning to work at Louisiana-Pacific Corporation, D. G. Mayes could, and did, engage in gainful employment.
For the foregoing reasons, we will not disturb the trial court's failure to find Mayes totally and permanently disabled.

APPELLANT'S CLAIM FOR PARTIAL DISABILITY
Appellant's alternative claim for workmen's compensation benefits for partial disability requires a determination of the correctness of the trial court's construction of LSA-R.S. 23:1221(3). That section of statute was part of the 1975 general legislative amendment to the Workmen's Compensation Law which changed the concept of disability with respect to the ability of workmen to perform gainful employment despite work-connected injury. Significant change was made in the statutory definitions of temporary total disability, permanent total disability, and partial disability [LSA-R.S. 23:1221(1), (2) and (3)]. Act No. 583 of the Louisiana Legislature of 1975; 36 La.L.Rev. 1018 (1976); 2 So.L.Rev. 107 (1975); Kilbourne v. Armstrong, 351 So.2d 802 (La.App. 1st Cir. 1977); LeBlanc v. Commercial Union Assurance Co., supra.
As noted in LeBlanc v. Commercial Union Assurance Co., supra, the 1975 amendment made significant change in the concept of total disability, either temporary or permanent. Under prior jurisprudence, an employee was considered totally disabled if he could not perform work of the same or similar description as that in which he was engaged when injured, notwithstanding his ability to earn the same or higher wages in a different line of endeavor. This was the construction placed on the statutory phrase defining total disability which consisted of the words, "total disability to do work of any reasonable character." These words have been replaced by the 1975 amendment. The total disability definition now requires "total disability of an employee to engage in any gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience...".
The 1975 amendment referred to partial disability as "disability of the employee to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience...". This definition of partial disability has been held to be substantially the same as total disability was judicially interpreted prior to the 1975 amendment. LeBlanc v. Commercial Union Assurance Co., supra; Conlay v. Houston General Insurance Co., supra; Rachal v. Highlands Insurance Co., supra; and Phillips v. Dresser Engineering Co., supra.
In this case before us the trial court found the plaintiff-appellant, D. G. Mayes, to be partially disabled. The trial court found there was a compensable accident which "has caused permanent partial limitation of his ability to move his head and neck and some chronic aggravation of pre-existing degenerative arthritis." It also found the wrist fracture "caused a persistent inability to use hand tools in a regular consistent manner during regular employment without pain and it caused an inability to completely close the right hand." From these findings the trial court made the following conclusions:
All these residual problems combined with the circumstances of plaintiff's age and education make it reasonably certain plaintiff cannot do carpentry work that he expected to do after retirement and there are probably some duties as a millwright that he cannot perform. The evidence before me convinces me this plaintiff can work as a carpentry foreman and earn $5.00 per hour supervising the work of other carpenters. * * * I also find that the only reason he cannot continue as a millwright for defendant is his age. His after retirement work discussed at length at trial indicates he can do some *52 other work such as supervise carpenters, but he cannot do carpentry work himself.
In oral argument it was urged on behalf of defendant-employer that the trial court had found that plaintiff's lack of employment was attributable to his retirement and age rather than the effects of his accident. Admittedly, the trial court did say as much. In one instance the trial court's reasons for judgment contains the following statement: "I also found that the only reason he [plaintiff] cannot continue as a millwright for defendant is his age." In another instance the following statement appears: "I am not convinced that his [plaintiff's] present lack of employment is caused by his accidentit is caused by his retirement and his age." The trial court's findings in its reasons for judgment must be read as a whole. When read as a whole, it becomes certain that the trial court did find plaintiff-appellant was partially disabled. The trial court held that plaintiff "can work as a carpentry foreman and earn $5.00 per hour supervising the work of other carpenters." Thereafter, the trial court applied its interpretation of the words "actually earns" in subsection (3) of LSA-R.S. 23:1221. As the trial court held these words mean the same thing as "is capable of earning," and inasmuch as $5.00 exceeded his wage as a millwright, it followed that no compensation was due for partial disability under the peculiar circumstances of the case.
The statements quoted above from the trial court's reasons for judgment purporting to hold that retirement and age alone were responsible for plaintiff's inability to work are in the nature of conclusions. On the bare face of the statements they would appear to be inconsistent with the other stated findings of the trial court which are more in the nature of findings of fact as opposed to conclusions. If there is any inconsistency in the reasons for judgment, the conclusions must yield to the findings of fact. In our opinion the record supports a finding of partial disability, and, in our opinion that is what the trial judge found.
The trial court's stated findings and conclusions holding plaintiff to be partially disabled are supported by the record. We find no manifest error in them. We do find, however, that the trial court committed manifest error in its application of LSA-R.S. 23:1221(3). This part of the statute provides that a partially disabled employee be paid 66 2/3 per cent of the difference between the wages the employee was earning at the time of injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience during the period of disability, but not beyond a maximum of four hundred weeks[1]...
As will be noted from the trial court's reasons for judgment, it disallowed compensation for partial disability grounded upon an interpretation which it placed on the words "actually earns," as contained in the provision for payment of benefits for partial disability. The trial court's reasoning and its interpretation were as follows:
While LRS 23:1221(3) uses the language "actually earns," I am of the view it means actually earns or is capable of earning. Otherwise, the choice of whether or not to work would rest solely with the employee and non-accident related factors could become involved, such as the availability of work and age. I believe the plaintiff would like to work, but only if there is employment available in the immediate vicinity of his residence. It is my view he is physically capable of earning $5.00 per hour if he is willing to work in an area where carpenter foremen are in demand. I am not convinced his present lack of employment is caused by this accidentit is caused by his retirement and age.
*53 Plaintiff-appellant was paid full compensation for total disability for the period dating from his accident until his return to work with defendant, that is, from November 2, 1975, through December 10, 1976. All of his medical expenses were paid. Inasmuch as $5.00 per hour, which the trial court believed the plaintiff could earn after his retirement, exceeded his regular wage before retirement, there was no difference to which the 66 2/3 percentage prescribed by LSA-R.S. 23:1221(3) could apply. Hence, the trial court denied any additional compensation and rejected plaintiff's demands at his costs.
In equating the words "actually earns" to mean "or is capable of earning," the trial court reasoned from policy considerations. No authority was noted, nor was there any resort to aids for legislative interpretation. We have not found that the specific issue has been the subject of any reported litigation.
We do not feel that policy considerations justify the interpretation placed by the trial court on the meaning of the words "actually earns." Section 1221 (3) of the amended statute is clear as enacted. There is no ambiguity in it. There is no more reason to believe the Legislature meant to provide that the capability of earning should be equated to what an employee "actually earns," if the employee chooses not to work, then there is reason to believe that the statute is to be construed literally as written. Whether the policy embodied in the statute in question as it reads is good or bad is immaterial. Without concrete indication that the Legislature meant more than it said, the courts may not add to the statute. Article 13 of the Louisiana Civil Code provides: "When a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit."
The prior statutory provision relative to partial disability employed the terms "wages which the injured employee is able to earn thereafter." (Emphasis supplied.) Therefore, a complete change was made through the 1975 amendment when the Legislature employed the terms "wages which the injured employee actually earns in any week thereafter." (Emphasis supplied.) Inasmuch as a change in words was made in order to substitute a diametrically contrary concept, it must be presumed that the change was deliberate.
The trial court gave as its policy reason for interpreting the new disability benefit payments provision to mean capability of earning as well as actual earnings, the fact that the option to work or not work would thus be left to the injured employee. The implication of such a holding is that the Legislature could not possibly have intended such a result. If that is so, then the Legislature, and not the courts, should correct the situation. However, we do not agree that the Legislature's intent can be read so clearly. We note that despite opportunities to do so since 1975, the Legislature has allowed the partial disability provision enacted in 1975 to stand. The matter has been commented upon,[2] and therefore, has no doubt been called to the attention of the Legislature. Professor H. Alston Johnson, III, writing in the Winter, 1978, issue of the Louisiana Law Review reviewed a case in which a claimant was awarded compensation under the old provision of the compensation law. At 38 La.L.Rev. 488, Professor Johnson said the following:
The amended definition of disability would probably have produced a more just resolution of the issue between the parties, had it been applicable. Plaintiff would no doubt have been classified as partially disabled, since there was no indication that she could not perform other employment which would not involve substantial risk of insect stings. She would then have been entitled to two-thirds of the difference between the wage she was earning at the time of the injury and the actual wage which she earned in any subsequent week, up to the applicable maximum number of weeks. This suggestion, *54 however, reveals a serious omission in the amended Act. There appears to be no particular incentive to encourage such a person to return to work; as long as she does not, she receives a full two-thirds of her previous wage, since the difference between the previous wage and no wage at all is, obviously, the previous wage.
It might have been better to use the phrase "any lesser wages which the injured employee actually earns or is capable of earning in any week thereafter." This at least would permit an employer to attempt to prove that the individual in question, though unable to return to his former employment, is capable of earning some wage at a different job. It is believed that the amendments to the disability definitions in the Act were intended to introduce this measure of flexibility which had been so noticeably absent in the past.
While Professor Johnson expressed the opinion that the Legislature intended to prescribe a measure such as that applied by the trial court in this case, the observation he states in the first paragraph quoted above notes that the Legislature did not, in fact, do so. We are inclined to believe that, had the Legislature intended to adopt a scheme under which, from a compensation base for partial disability there should be deducted any lesser wages, either actually earned or which the worker is capable of earning, it would have further amended the compensation law to clarify its intentions.
In addition to the law review commentaries referred to, the Legislature's attention should have been called to the interpretation being given by the courts to the new statutory rule for determining compensation for partial disability. Although the courts have not considered the precise issue before us, the term "actually earns" has been frequently noted in jurisprudence. In LeBlanc v. Commercial Union Assurance Co., supra, in which the Supreme Court denied writs, the Court of Appeal for the First Circuit commented as follows:
It appears that the amendment to 1221, above, was intended to relieve the effect of prior jurisprudence which held that an injured employee was entitled to benefits when he could not perform the same or similar work in which he was engaged when injured but could, nevertheless, earn wages at some other occupation. We so find, because Section 1221(3), as amended in 1975, fixes compensation for partial disability at "... sixty-six and two-thirds per centum of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation...." (Emphasis by the court.) We interpret this language to mean that a partially disabled employee who remains unemployed during the continuance of partial disability is entitled to receive the compensation presently provided in Section 1221(3), above, for the period of such disability, not exceeding 400 weeks. If, however, such an employee secures other employment at wages less than those earned at the time of injury, he is entitled to compensation at the rate of sixty-six and two-thirds per cent of the difference between the wages earned at time of injury and wages actually earned thereafter in any other work. If such an employee earns wages equal to or greater than those earned at time of injury, he is entitled to no compensation during the period such equal or greater wages are earned. It is elementary that the right to any compensation whatsoever ceases upon cessation of partial disability. That there might be inherent inequity in the present definition of partial disability and the benefits provided therefor, is a matter which addresses itself to the legislature. Our function is to interpret the statute as written. We find that the statute as amended intends that a partially disabled employee shall be paid compensation for such period of disability during which he earns no wages in any gainful occupation.
*55 The above quotation states an interpretation entirely consistent with our views.[3] Out of respect for contrary views, including those of the distinguished trial judge in this case, we have gone to some length to show that the Legislature has had ample time to alter subsection (3) of LSA-R.S. 23:1221 if it meant to prescribe a standard for computing benefits that includes a worker's capability of earning where the injured worker chooses not to work. However, we do not place primary reliance on this fact for our interpretation. We principally base our holding on the fact that the statutory words under consideration are clear and unambiguous. Hence, they must be given effect as written.
Inasmuch as we have concluded that plaintiff-appellant is entitled to be awarded compensation for partial disability, it will not be necessary to consider his other alternative claims under LSA-R.S. 23:1221(4).
Consistent with our holding in this case, defendant-appellee should be given credit for such compensation as was paid for the time plaintiff was initially injured until the time he returned to work at Louisiana-Pacific Corporation. Defendant-appellee is not entitled to credit for plaintiff's earnings subsequent to his return to work at Louisiana-Pacific Corporation until his retirement. Such wages were fully earned and were not a gratuity. The rule in such instances is that the employer is entitled to no credit for wages paid where they are fully earned. Madison v. American Sugar Refining Co., 243 La. 408, 144 So.2d 377 (1962); Lachney v. Cabot Corporation, 368 So.2d 500 (La.App. 3rd Cir. 1979); McGee v. State, Through Bd. of Commissioners, 355 So.2d 1079 (La.App. 4th Cir. 1978) and Futrell v. Hartford Accident and Indemnity Co., 276 So.2d 271 (La.1973).
Although defendant-appellee is not entitled to a credit for wages paid for work performed after plaintiff's return to Louisiana-Pacific Corporation and retirement, nevertheless, plaintiff is not due any compensation for that period. This results from the application of the 1975 amended version of LSA-R.S. 23:1221(3). As reviewed above, that section establishes the base, a percentage of which is paid as compensation. The base is the wage paid before injury, less any lesser wages actually earned. Since the wage earned by D. G. Mayes at Louisiana-Pacific Corporation was the same upon his return after his convalescence as what he earned prior to injury, the base is zero. With a base of zero, the 662/3 payable is applied to nothing and yields nothing.
In the same manner, the actual earnings of plaintiff that he received for work performed by him after his retirement, must be accounted for in calculating partial disability after retirement. This must be done on a weekly basis. The phraseology of the statute is "any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages....
We perceive a distinction between a credit against compensation which may be payable, as established by the line of cases represented by Madison v. American Sugar Refining Co., supra, and the reduction of the base wage used for figuring partial disability by the amount of wages actually earned in a given week as required by LSA-R.S. 23:1221(3).
For the foregoing reasons, the judgment of the trial court is reversed. It is now decreed that there be judgment in favor of plaintiff-appellant, D. G. Mayes, and against defendant-appellee, Louisiana-Pacific Corporation, for workmen's compensation benefits for partial disability under LSA-R.S. 23:1221(3) for a period not to exceed four hundred weeks from the date of plaintiff's injury, November 2, 1975, subject to the maximum benefits payable, and subject to a credit for compensation payments previously paid [$364.28 for the period of November 2, 1975, through December 10, 1975], the compensation payable to be 66 2/3 per cent of the difference in any one *56 week between the wage being earned on November 2, 1975, and any lesser wages plaintiff has actually earned thereafter on a weekly basis and earned from gainful occupation, the same to apply as to any wages which may be actually earned in the future, together with legal interest on each payment from the date it shall have become due until paid. All costs of these proceedings including this appeal shall be assessed to defendant-appellee.
REVERSED AND RENDERED.
NOTES
[*] District Judge G. Bradford Ware, Fifteenth Judicial District Court, participated in this decision as Judge Ad Hoc.
[1] Four hundred weeks is the maximum applicable to the period after September 1, 1975, and on or before August 31, 1976. D. G. Mayes' accident occurred on November 2, 1975.
[2] See student comment in 36 La.L. Rev. 1018 (1976) at page 1024, which characterizes the provision in question as anomalous because it does leave the option with the employee.
[3] For a seemingly contrary statement in dicta by the Court of Appeals for the First Circuit, see Kilbourne v. Armstrong, 351 So.2d 802, 806 (La.App. 1st Cir. 1977).