422 So.2d 1187 (1982)
Edgar W. JOHNSON
v.
AETNA CASUALTY & SURETY CO., et al.
Jessie Mae JOHNSON
v.
AETNA CASUALTY & SURETY CO., et al.
Nos. 15024, 15025.
Court of Appeal of Louisiana, First Circuit.
October 12, 1982.
Rehearing Denied December 16, 1982.
*1188 L.B. Ponder, Amite, for plaintiffs-appellants.
Iddo Pittman, Jr., Hammond, for defendants Aetna Cas. & Sur. Co., Crown Zellerbach Corp. and Triangle Timber, Inc.
Before ELLIS, PONDER and SAVOIE, JJ.
SAVOIE, Judge.
These consolidated workmen's compensation claims are before this court for a second time. Originally, the trial court concluded plaintiffs' injuries did not arise out of and occur within the course of plaintiffs' employment and denied relief. We reached the opposite conclusion on appeal and remanded for a determination of quantum, 387 So.2d 1340. On remand, the trial court computed the compensation rate of $39 per week for both plaintiffs. At that time, it reconsidered the issue of Mr. Johnson's disability (under R.S. 23:1331), and held Mr. Johnson to be permanently and totally disabled. Further, the trial court denied penalties and attorney fees under R.S. 23:1201.2. It also denied defendants' claim of credit for a $1,200 medical payment.
Presently, plaintiffs contend the trial court erred in determining the compensation rate at $39 per week[1] and in refusing to award statutory penalties and attorney fees. Furthermore, defendants claim the court erred in failing to give credit for the $1,200 payment, and in failing to determine Mr. Johnson was no longer permanently and totally disabled and to compute his award accordingly.
We have modified Mr. Johnson's award based on our determination that he is no longer permanently and totally disabled. In all other respects, the trial court's judgment is affirmed.
Plaintiffs were injured in a head-on collision when returning from work on July 10, 1978. Mr. Johnson's injuries consisted of a broken hip, laceration of an ear and loss of several teeth. Thus, this court, on first appeal, concluded that Mr. Johnson was permanently and totally disabled. We further determined that Mrs. Johnson was entitled to workmen's compensation benefits for a 16-week period. The trial court was charged with computing the applicable compensation rate.
*1189 On this second appeal, plaintiffs claim the trial court erred in computing the compensation rate of $39 per week. This rate was determined in accordance with the provisions of R.S. 23:1202.[2] A letter from the Louisiana Department of Labor lists the average weekly wage figures from 1976 to 1979, as follows:

September 1, 1976 $179.13
September 1, 1977 $194.75
September 1, 1978 $210.88
September 1, 1979 $220.08

Plaintiffs argue the trial court erred in computing the rate on the $194.75 wage figure rather than the $210.88 figure.
Paragraph 2 of R.S. 23:1202 (see footnote 1) provides that the weekly wage be determined on or before August 1 each year. This wage is applicable for the full period during which compensation is payable when the date of injury falls within the twelve month period commencing September 1 following the determination. This accident occurred on July 10, 1978. Therefore, $194.75 is the applicable average weekly wage.
The court established E.W. Johnson's wages to be the same as his co-worker, Mrs. Johnson, since there existed no evidence to show his wages nor was there any specific information on which to base his net earnings. We find no error in this determination. Rashall v. Fallin & Savage Timber Company, 127 So.2d 238 (La.App. 3rd Cir.1961); Malone and Johnson, Workers' Compensation § 327 in 14 Louisiana Civil Law Treatise 103 (1980).
Secondly, plaintiffs contend the trial court erred in refusing to award penalties and attorney's fees. R.S. 23:1201.2 provides for the recovery of penalties and attorney's fees when the employer's failure to pay compensation under this statute is arbitrary, capricious and without probable cause. The trial court concluded a legitimate dispute existed between the parties as to the amount of wages and the rate of compensation. We find no manifest error by the court on this issue.
Further, this court finds no error in the trial court's denial of credit to defendants for the $1,200 medical payment. R.S. 23:1203 provides, in pertinent part:
"In every case coming under this Chapter, the employer shall furnish all necessary medical, surgical and hospital services, and medicines, or any non-medical treatment recognized by the laws of this state as legal."
Therefore, defendants are not entitled to a credit for moneys advanced as a personal loan to plaintiffs by Mrs. Curtis. This is so, even though the moneys were used to pay part of Mrs. Johnson's hospital expenses.
Defendants' assignments of error as to Mr. Johnson's disability and compensation therefor involve several different provisions of R.S. 23:1221. The first two paragraphs of this statute set forth the compensation schedule for payment to totally disabled workers. Total disability, whether permanent or temporary, means the inability to engage in any gainful occupation, whether or not the same or one similar to that in which the employee was customarily engaged when injured. Schouest v. J. Ray McDermott & Co., Inc., 411 So.2d 1042 (La. *1190 1982); Kilbourne v. Armstrong, 351 So.2d 802 (La.App. 1st Cir.1977). On remand, the evidence established Mr. Johnson's employment at that time with Reed & Sims, Inc. Therefore, the trial court should have concluded that Mr. Johnson was no longer permanently and totally disabled.
Our holding that Mr. Johnson was no longer permanently and totally disabled requires a further determination of his present status of disability. Defendants contend that the trial court erred in failing to find Mr. Johnson only partially disabled. R.S. 23:1221(3) provides the compensation rate "for injury producing partial disability of the employee to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature or description for which he was fitted by education, training, and experience." This means that if an injured employee is unable to perform his usual or customary occupation but can engage in some other gainful employment for which he is fitted by education, training, or experience, he is only partially disabled. Kilbourne v. Armstrong, 351 So.2d 802 (La.App. 1st Cir.1977); Dupont v. Ebasco Services, Inc., 411 So.2d 605 (La.App. 4th Cir.1982). On remand, it was established that Mr. Johnson was hauling wood for Reed & Sims, Inc. However, the evidence revealed that Mr. Johnson was no longer able to handle a saw or walk on uneven ground. Consequently, he could no longer perform many of the activities required in his work. Instead of felling the trees, Mr. Johnson was measuring the logs and driving the truck. Thus, Mr. Johnson remained partially disabled.
For injuries producing partial disability of the employee, the compensation rate is 66& 2/3% of the difference between the wages the employee was earning at the time of the injury and any lesser wages which the injured employee actually earns in any week thereafter in any gainful occupation for wages ... R.S. 23:1221(3). This provision is pertinent to defendants' claim that the trial court erred in failing to ascertain that Mr. Johnson's earnings at the time of the remand were equal to or in excess of his earnings at the time of the accident. The accounting records of Mr. Johnson's respective employers show that Mr. Johnson's wages, after the injury, were in excess of the wages earned at the time of injury. Thus, at that time, Mr. Johnson was entitled to no compensation for partial disability under the terms of R.S. 23:1221(3).
For these reasons, we amend and hold plaintiff Mr. Johnson to be partially disabled. He is entitled to receive compensation at the rate of $39 per week from the date of accident (July 10,1978) until date of gainful employment (July 3, 1980).[3] In all other respects, the judgment of the trial court is affirmed. Costs of the appeal are to be borne by defendants.
AMENDED AND AFFIRMED.
NOTES
[1] The trial court's "Findings of Court" explains the manner in which it arrived at this compensation rate as follows: "At the original trial, plaintiff Edgar W. Johnson testified that from the total amount he received from Triangle Timber for a load of pulpwood, he paid his crew $4.00 per cord. (Tr. p. 96) Jessie Mae Johnson testified that she and the two boys split the $4.00. (Tr. p. 118) Her share would thus be $1.33 per cord. The figure of $1.33 per cord, times the average of 35.71 cords per week, would amount to average earnings of $47.49 per week for Jessie Mae Johnson. Sixty-six and 2/3 percent of this figure would amount to a compensation rate of $31.63 per week. However, the minimum compensation required by R.S. 23:1202 is 20% of the $194.75 established by the Louisiana Department of Labor as the average weekly wage. This makes the minimum $38.95, rounded to $39.00 as the nearest dollar, ..."
[2] R.S. 23:1202 reads, as follows:

"(1) ... For injuries occurring on or after September 1, 1977, the maximum weekly compensation to be paid under this Chapter shall be sixty-six and two-thirds per centum of the average weekly wage paid in all employment subject to the Louisiana Employment Security Law and the minimum compensation shall be not less than twenty per centum of such wage, said maximum and minimum to be computed to the nearest multiple of one dollar. In any case where the employee was receiving wages at a rate less than the applicable minimum compensation, the compensation shall be the employee's wages". (Emphasis added)
"(2) For the purposes of this Chapter, the average weekly wage in all employment subject to the Louisiana Employment Security Law shall be determined by the administrator of the division of employment security on or before August 1 each year as of the quarter ending on the immediately preceding March 31 of each year. The average weekly wage so determined shall be applicable for the full period during which compensation is payable when the date of occurrence of injury falls within the twelve month period commencing September 1 following the determination.
[3] The record fails to establish the exact date Mr. Johnson began working for Reed & Sims, Inc. However, Reed & Sims' accounting records show the company first issued Mr. Johnson a check on July 3, 1980.