368 So.2d 500 (1979)
Lawrence J. LACHNEY, Plaintiff and Appellee,
v.
CABOT CORPORATION and Texas General Indemnity Company, Defendants and Appellants.
No. 6821.
Court of Appeal of Louisiana, Third Circuit.
February 15, 1979.
Rehearing Denied March 29, 1979.
*501 Dubuisson, Brinkhaus & Dauzat by James G. Dubuisson, Opelousas, for defendant and appellant.
Fusilier, Pucheu & Soileau, A. Gaynor Soileau, Ville Platte, for plaintiff and appellee.
Before CULPEPPER, GUIDRY and SWIFT, JJ.
CULPEPPER, Judge.
This is a suit for workmen's compensation benefits. The plaintiff, Lawrence Lachney, contends he is totally and permanently disabled as the result of an injury to his knee which occurred in 1976 while working for the defendant, Cabot Corporation, in its carbon plant. The trial court found plaintiff is totally and permanently disabled and awarded $85 per week commencing October 16, 1977 for the duration of his disability. The district judge also awarded penalties and attorney's fees for the arbitrary termination of compensation benefits. From this *502 judgment, the defendants appealed. Additionally, defendants filed in the appellate court an exception of prescription to the plaintiff's claim.
The issues are: (1) Was there an accident in 1976 in which the plaintiff suffered injury to his knee? (2) If such an accident did occur, what is the extent of the plaintiff's disability resulting therefrom? (3) Has the plaintiff's claim prescribed? (4) Were the defendants arbitrary, capricious and unreasonable in their termination of workmen's compensation benefits, subjecting them to penalties and attorney's fees under LSA-R.S. 22:658 and LSA-R.S. 23:1201.2 respectively?
The facts prior to the alleged accident in 1976 are virtually undisputed. The plaintiff severely injured his left knee on April 9, 1975 by slipping on a wet concrete floor while working for Cabot. As a result of the fall, the medial meniscus of plaintiff's left knee was removed in July of 1975. Lachney received workmen's compensation during the period of his disability resulting from this accident until his return to work for Cabot on November 13, 1975.
Plaintiff contends that on March 4, 1976 he reinjured his left knee by hitting it on a motor while performing his duties as a repairman for Cabot. This is the accident at issue. There were no witnesses to the accident, but on the same day plaintiff reported it to his acting supervisor, Audrey Guillory, when Guillory asked plaintiff to help another worker unload some large crates of soap. As a result of Lachney's refusal to do the job, because of pain in his knee, he was laid off as a disciplinary measure. A report of the accident was made in Cabot's files.
Plaintiff did not go to a doctor on this occasion. After four days, he returned to his job as a repairman. This job required climbing, but plaintiff was not required to climb. In September of 1976, he was assigned duties as a carpenter, a job which did not require climbing, but paid more wages. He worked as a carpenter until April 27, 1977. Plaintiff contends that by this date the pain and swelling in his knee had become so bad that he could no longer perform his duties as a carpenter. From April 27, 1977 until October 16, 1977 he was paid workmen's compensation. This suit was filed October 18, 1977, just two days after the plaintiff's compensation benefits were terminated.
The trial court found as a fact that there was an accident on March 4, 1976 in which the plaintiff reinjured his left knee. As the company's own records reveal, the accident was reported to the proper authority. The plaintiff told two doctors who subsequently examined him about the reinjury. Importantly, we are impressed, as was the trial judge, with the man's excellent work record prior to the accident. In the ten or eleven years that he had worked for the company, he had missed very little work. His fellow workers, as well as the company representatives, testified that the plaintiff was an excellent worker and not a person who would malinger. These facts substantiate the plaintiff's claim. Under the standards of appellate review of fact enunciated by our Supreme Court in Arceneaux v. Domingue, 365 So.2d 1330 (La.1979), we hold that the trial court's finding of a reinjury on March 4, 1976 is not clearly wrong.
The extent of the plaintiff's injury is a separate issue. Lachney complains that his knee swells in proportion to his activities, it constantly pains him, and tends to give way on him without notice. Additionally, there is a crunching sound when the knee joint moves. Without exception, all of the doctors whose testimony is in the record stated that the plaintiff has a degenerative arthritic condition in the left knee which will only get worse with time and which causes him pain. Such a condition, several of the experts state, is often found in patients after a medial meniscectomy. Another expert states that in a man as young as the plaintiff, 44 years of age, the arthritis is probably trauma induced. Additionally, plaintiff suffers crepitation of the patella.
Without exception, the five doctors whose testimony is in the record are of the opinion that plaintiff suffers some degree of disability. Four of the doctors believe that although the plaintiff could not perform *503 without substantial pain any job which requires stooping, climbing or squatting, he is capable of performing some types of work. For example, when asked if the plaintiff could perform a job which required stooping, bending, kneeling or climbing, Dr. Louis Blanda, one of the plaintiff's experts replied:
"Most of the instability that this man has is with certain maneuvers and planting his foot and making certain turns. I suppose some of these maneuvers with climbing and stooping would also give him trouble, especially with the arthritic changes that have developed. I don't think he could probably do that type of work."
When asked if Lachney's injury ruled him out of the common labor market, Dr. Blanda replied:
"No sir, I don't believe he needs necessarily to be completely ruled out but I feel that perhaps his type of work should be modified to protect his knee and perhaps even, you know, endangering hisendangering him from other injury if his knee does give out when he is doing a dangerous type of job."
Another orthopedic surgeon called by the plaintiff, Dr. F. Lionel Mayer, stated that Lachney could perform the duties of a job which did not require stooping, climbing, or other twisting motion. The plaintiff, in his opinion, could do some types of light manual labor, but would have difficulty doing any heavy work:
"I think that he could do heavy manual labor for short periods of time, but over the long haul, I believe, he would have difficulty. I believe that he would probably have substantial amount of knee pain."
The third expert called by the plaintiff, Dr. Kenneth Saer, estimated a physical impairment of 30%. He stated:
"I thought that he could function with his problem. The problem did not seem to be of such a degree that it would preclude most types of activities. It might limit him from a lot of repetitive climbing, squatting or stooping."
When asked if the plaintiff's complaints of pain were reasonable, considering the work he was doing, Dr. Saer replied:
". . . basically he has a type of knee that I think might well give him difficulty in doing a lot of stooping and climbing. Other activities I'd be surprised if he had a lot of pain. I wouldn't be surprised if he has discomfort, but surprised if he has a lot of pain in activities not involving a lot of climbing or stooping."
Dr. Thomas Campanella, a witness for the defense, expressed a similar opinion:
". . . some days he may not have any pain and other days, depending on how much squatting and climbing he would do, he would have some mild pain, but this should not be to the point where it will make him 100 per cent disabled, but a little aspirin or some medication should make him do his work without trouble."
The other expert witness for the defense, Dr. Meuleman, was the physician who performed the operation on the knee the first time it was injured. Of the experts who testified, Dr. Meuleman discounted the plaintiff's complaints of pain and disability the most. However, he fixed the plaintiff's disability at 25% of the knee joint.
It is clear from the above medical testimony that the plaintiff will never be able to do heavy manual labor. However, it is the concensus of the doctors' testimony that he can perform some types of activities without pain.
This Court must determine how these factual findings translate into a legal holding as to the extent of disability. Prior to 1975, LSA-R.S. 23:1221(2) defined total disability as the disability "to do work of any reasonable character." This statutory definition was construed by the jurisprudence to mean that an employee is totally and permanently disabled when he is unable to perform the same type of work as that which he performed at the time of the accident. Brannon v. Zurich General Accident and Liability Insurance Company, 224 La. 161, 69 So.2d 1 (S.Ct.1953); Futrell v. *504 Hartford Accident & Indemnity Company, 276 So.2d 271 (S.Ct.1973); Malone, Louisiana Workmen's Compensation Law and Practice, Sec. 273, p. 328.
The 1975 amendment to LSA-R.S. 23:1221, Act 583 of 1975, substantially changes the definitions of disability. Under the new act, total and permanent disability is no longer defined as the inability "to do work of any reasonable character." Instead, it is defined in subdivision (2) as the inability "to engage in any gainful occupation for wages whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience . . . ."
Partial disability is now defined in subdivision (3) as the inability "to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature or description for which he was fitted by education, training and experience, . . . whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training and experience . . . ."
The plaintiff has a seventh grade education. At the time of the accident, he was customarily engaged in strenuous physical labor requiring climbing, stooping or squatting. As a result of the accident, and, in particular, because of the instability of his left knee, he cannot now engage in work which requires climbing, stooping or squatting. However, all of the expert medical witnesses agree that he can engage in work which does not require these activities.
We conclude the trial judge was clearly wrong in finding plaintiff permanently and totally disabled under LSA-R.S. 23:1221(2). Plaintiff is only partially disabled under LSA-R.S. 23:1221(3), since he can perform some types of work for wages.
LSA-R.S. 23:1221(3) provides benefits for partial disability resulting from an accident which occurs between September 1, 1975 and August 31, 1976, at the rate of 662/3% of the difference between the wages being earned at the time of the injury and any lesser wages actually earned during the period of disability, not to exceed 400 weeks. At the time of the March 4, 1976 injury, the plaintiff was earning $5.76 per hour, an average of $252 per week, as a repairman. He is therefore entitled to the maximum of $85 per week under LSA-R.S. 23:1202 during the period of his disability, not to exceed 400 weeks.
This award is subject to a reduction under LSA-R.S. 23:1221(3) as follows:
". . . provided further that for any week during which the employee is paid any compensation under this subdivision (3) the employer shall be entitled to a reduction of one full week of compensation against the maximum number of weeks for which compensation is payable under this subdivision (3) and for any week during which the employee is paid no compensation, because of the employee's actual earnings during that week, the employer shall not be entitled to a reduction for that week against the maximum number of weeks for which compensation is payable under this subdivision (3),. . . ."
In the present case, plaintiff was paid compensation after the March 4, 1976 accident for the period April 27, 1977 to October 16, 1977, a total of 24 weeks and 3 days. Thus, the employer is entitled to a reduction of 25 weeks during which compensation was paid. The employer is not entitled to any reduction for the wages paid during the period March 4, 1976 to April 27, 1977, because the plaintiff actually earned these wages and the employer paid no compensation during that period. See Madison v. American Sugar Refining Company, 243 La. 408, 144 So.2d 379 (1962) for the rule that an employer gets no credit for wages actually earned by the employee retained after the accident.
*505 Defendants' exception of prescription is based on the premise that the only accident was on April 9, 1975, when plaintiff slipped and fell on the wet concrete. If this were true, the compensation benefits paid for that accident terminated on November 13, 1975, at which time plaintiff returned to his original duties as a repairman. Under LSA-R.S. 23:1209, any suit for benefits resulting from injuries received in the April 9, 1975 accident would have to have been filed within one year from the time workmen's compensation payments were terminated on November 13, 1975, or, in any event, within two years from the date of the accident. The present suit was not filed until October 18, 1977, and would be prescribed by both one and two years if the only accident was on April 9, 1975.
However, for the reasons stated above we find that there was a second accident on March 4, 1976. After four days, plaintiff returned to work as a repairman, but not climbing, until September of 1976, at which time he was assigned duties as a carpenter, which did not require climbing. He was performing the duties of a carpenter at the time he terminated his employment on April 27, 1977. Compensation benefits for injuries received in the March 4, 1976 accident were paid for the period from April 27, 1977 to October 16, 1977. This suit was filed on October 18, 1977, two days after the termination of compensation payments. Therefore, the present suit was timely filed, and defendants' exception of prescription must be overruled.
The final issue is whether plaintiff is entitled to penalties and attorney's fees. In his written reasons, the trial judge did not expressly state his reasons for granting penalties and attorney's fees, but we assume he did so on the basis that all of the expert medical witnesses agreed plaintiff was at least partially disabled at the time workmen's compensation payments were terminated on October 16, 1977. We agree.
LSA-R.S. 23:1201.2 provides that any employer who discontinues payment of workmen's compensation benefits shall be liable for penalties and attorney's fees "when such discontinuance is found to be arbitrary, capricious, or without probable cause." A similar provision applicable to workmen's compensation insurers is in LSA-R.S. 22:658.
Mr. Charles Cox, safety director for Cabot, testified that workmen's compensation payments were terminated in October of 1977 on the basis of medical reports received from Drs. Meuleman, Campanella and Saer. From the above discussion of the reports of these three physicians, it is apparent that not one of them reported that plaintiff could return to work which would require climbing, squatting or stooping, although they were of the opinion that he could perform work which did not require these activities. Expressed in terms of the definitions of disability in the Workmen's Compensation Act, the unanimous opinion of these doctors was that the plaintiff was partially disabled.
There is no evidence that at the time workmen's compensation payments were terminated on October 16, 1977, either Cabot or its insurer had any medical or other evidence which justified them in completely ceasing all payments. Clearly, the employer and the insurer were arbitrary, capricious and without probably cause in terminating payments. The award of penalties and attorney's fees must be affirmed.
For the reasons assigned, the judgment appealed is reversed insofar as it finds plaintiff totally and permanently disabled and awards compensation at the rate of $85 per week, commencing October 16, 1977 for the duration of disability. The judgment is amended so as to award plaintiff compensation for partial disability under LSA-R.S. 23:1221(3) at the rate of $85 per week commencing April 27, 1977 and continuing during the period of his disability, not to exceed 400 weeks, subject to a reduction of 25 full weeks of compensation, with legal interest on each past due installment from its due date until paid. Otherwise, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendantsappellants.
REVERSED IN PART, AMENDED AND AFFIRMED IN PART.