SCHOTT, Judge.
This is a workmen’s compensation case in which plaintiff was awarded benefits for partial disability pursuant to LSA R.S. 23:1221(3) in connection with an accident on the job on June 29, 1977. Plaintiff has appealed seeking benefits for total disability as well as certain unpaid medical expenses. She also seeks penalties and attorney’s fees based on the alleged arbitrary and capricious refusal by employer’s insurer to pay certain medical expenses and compensation for the period from January 15 *373 until July 21, 1978. Defendants have answered the appeal seeking a termination of benefits as of the end of July, 1979, and alternatively a reduction of the award to 100 weeks for residual disability pursuant to R.S. 23:1221(4)(p). The principal issue is whether the trial judge erred in his finding that plaintiff’s pain was not substantial so as to entitle her to benefits for total disability or that plaintiff’s pain resulting from phlebitis was neither caused nor aggravated by plaintiff’s injury of July, 1977. The other issues raised by the specifications of error and defendants’ answer will be discussed hereafter.
Plaintiff, who was a mail clerk, injured her back on June 29,1977, when she lifted a mail carrier box. A few days later she saw her internist, Dr. Louis Levy, II, who diagnosed a lumbosacral sprain and prescribed medication and heat treatments. She had first seen Dr. Levy in February, 1976, when she was admitted to the hospital and was found to be suffering from thrombo-phlebi-tis. She was treated for this condition by Dr. Levy from February, 1976, until and beyond the time of her accident. In September, 1977, she was admitted to the hospital for lumbosacral sprain and phlebitis where she was treated by Dr. Levy in consultation with Dr. Kenneth Adatto, an orthopedic surgeon. X-ray studies of the back were basically normal and conservative care was indicated. She remained under the treatment of Dr. Adatto for her back and improved until January 12, when he felt that her prognosis was favorable and that she was doing “really well.” He advised her to return to work as a mail carrier on January 16, 1978.
At this time plaintiff did take employment at the airport doing security checks for passengers boarding planes. This involved handling passengers’ hand baggage, and after a brief period she resigned because of constant pain in her legs and back. She returned to Dr. Adatto in March and he referred her to Dr. Dorsey Dysart, a neurologist, for an evaluation. In April Dr. Dy-sart conducted an electro-diagnostic examination on plaintiff and diagnosed her condition as a bilateral L4, L5 and SI radiculopa-thy. However, in May Dr. Adatto, after reviewing Dr. Dysart’s report, concluded that her condition “appears to be bruising reaction rather than a ruptured disc” and he advised her that she could return to work “as long as she protects her back from stressful activity.” While this report was given to the employer’s insurer, Dr. Adatto testified that Dr. Dysart’s studies indicated more than just a simple lumbar strain and suggested disc involvement, so that a mye-logram was recommended. She was hospitalized in July for this purpose and was found to have two ruptured discs. A lumbar laminotomy was performed bilaterally at L3 — 4 and L5-S1, along with a discogram at L4 — 5.
Following the surgery, plaintiff continued to be treated by Dr. Adatto who testified that by May of 1979 she was getting better but was not yet in a position to return to gainful employment. He felt that by June or July, 1979, she should be able to work from an orthopedic standpoint, assuming no difficulties with the phlebitis.
In the meantime, plaintiff continued to suffer with phlebitis, and in October of 1978 was admitted to the hospital by Dr. Levy for that condition. On the date of plaintiff’s last visit to Dr. Levy in April, 1979, he found no active phlebitis and felt that her condition should remain stable in the absence of any traumatic injury to her leg.
Plaintiff testified that she was still in great pain at the time of the trial in June, 1979, and was then wearing a “TNS machine” which is designed to relieve the patient’s pain and remove her from the need for medication. She was not working at the time of the trial and testified that she would not work as long as she continued to have such severe pain.
The first question is whether the trial court erred as a matter of law in limiting plaintiff to recovery for partial disability as opposed to total disability. As a matter of law a plaintiff able to work but only in substantial pain is totally disabled and entitled to the benefits conferred by R.S. 23:1221(2), Whitaker v. Church’s Fried *374 Chicken, Inc., - So.2d - (La.1980, No. 65401). However, the determination of the degree of pain is a factual determination largely based on the testimony of the plaintiff who, in the final analysis, is the only one capable of describing her pain. While plaintiff’s testimony would support a conclusion that her pain was substantial, and this testimony was corroborated by her mother’s testimony, the trial judge apparently concluded that this pain was not of the severity which she described. Her treating physician, Dr. Adatto, concluded that she had a 20 to 25 percent disability and stated that she would “always have pain and discomfort on a permanent basis.” He also stated that the pain “should be controlled with the TNS machine, keeping her weight under control, over the counter medicine, it’s something she will learn to live with, most people do.” Dr. Adatto gave the unqualified opinion that her total disability from performing any employment was on a temporary basis only, and indicated that she could do general clerical work in the future provided she did not use her back in stooping or lifting.
Plaintiff’s biggest problem is that some of her pain and difficulty is caused by the phlebitis and not by her back problem. If the phlebitis had been caused or aggravated by her injury her case for total disability would be much stronger. Plaintiff attempted to prove that the phlebitis was aggravated by the surgery on her back together with post-operative immobilization in July, 1978, but in the final analysis fell short of carrying her burden of proof in this regard. Drs. Adatto and Manale, both orthopedists, seemed to think that her phlebitis was aggravated by the accident and/or the back surgery but both deferred to Dr. Levy, the acknowledged expert in this field, and he would not say that it was more probable than not' that the phlebitis was aggravated. His opinion that causal connection was only a possibility and not a probability was shared by Dr. Marion Williams, a thoracic and cardiovascular surgeon, who did not examine plaintiff but did review all of the medical reports on plaintiff at the request of defendants. Both Drs. Levy and Williams indicated that the absence of some symptoms following the July surgery, such as swelling and pain in plaintiff’s legs, precluded a conclusion that her phlebitis was aggravated by the surgery.
With the foregoing discussion we reach the conclusion that there is no manifest error in the trial court’s award of benefits for partial disability under R.S. 23:1221(3) and thereby dispose of the first three specifications of error by plaintiff as well as defendants’ contention that the award be reduced to benefits for temporary total disability under R.S. 23:1221(1) or residual disability to the spine under R.S. 23:1331(4)(p).
Plaintiff next contends that the trial court erred in not awarding her a judgment for the medical expenses which she incurred during her hospitalization in October, 1978. The judgment’s only pertinent provision was for “all medical expenses incurred in the treatment of the back injury” and it was stipulated that all expenses except the October hospitalization had been paid. We are thus unsure of the trial judge’s intent on this item. In any case, the record shows that Dr. Levy was the admitting physician at this time. Plaintiff was complaining of swelling in her legs along with chest and abdominal pains. During this hospitalization she was examined by Dr. Bernard Ma-nale, who was Dr. Adatto’s partner, and upon her discharge Dr. Levy diagnosed “anemia, post-lumbar laminectomy and possible phlebitis.” He explained that there were no overt signs of phlebitis except questionable calf tenderness in both legs, and he indicated that this hospital stay in retrospect was necessitated by both back pain and leg pain. In view of the fact that plaintiff was still under Dr. Adatto’s care in October, 1978, this hospitalization occurred only three months after the back surgery, she was examined by Dr. Manale in place of Dr. Adatto during this hospitalization, and according to discharge notes Dr. Manale referred her to physical therapy for instructions on back strengthening exercises, we have concluded that there is sufficient connection between the back injury and the *375 hospitalization to warrant her expense recovery of the bill in the amount of $1484.10.
Plaintiff further contends that the trial court erred in not awarding her compensation benefits unpaid for the period January 15 through July 21, 1978, along with penalties and attorney’s fees, for nonpayment. As to the benefits themselves, the judgment provides for payment of maximum benefits beginning June 29,1977, and continuing for 425 weeks so that this disputed period is included in the judgment. Since that portion of the judgment was in plaintiff’s favor, and defendants did not take a suspensive appeal, the judgment is final on this point and plaintiff is entitled to execute her judgment for the benefits for this period. As to penalties and attorney’s fees in connection with the benefits for this period we have concluded that plaintiff is entitled to make this recovery. Although the insurer was told as late as May 15, 1978, by Dr. Adatto that plaintiff could return to work and although the insurer had a report from Dr. Stoker in March that she could work, it was established in July that she had two ruptured discs so that her complaints of pain over the previous five months were clearly demonstrated to be true. At this point, the failure to pay benefits for the period from January 15 to July 21 became arbitrary, capricious and without probable cause and subjected defendants to the 12% penalty. Plaintiff is therefore entitled to recover the sum of $307.70 (12% times $95 times 27 weeks) plus attorney’s fees which we assess at $500.
Accordingly, that portion of the judgment appealed from awarding plaintiff benefits for partial disability and medical expenses is affirmed and is to include the sum of $1484.10 for the October, 1978, hospitalization. That portion of the judgment denying plaintiff penalties and attorney’s fees is reversed and she is awarded penalties of $307.70 and attorney’s fees of $500. In all other respects the judgment is affirmed. Defendants are assessed the costs of this appeal.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.