393 So.2d 346 (1980)
Donald J. KRAEMER
v.
LOUISIANA POWER & LIGHT COMPANY.
No. 13784.
Court of Appeal of Louisiana, First Circuit.
December 15, 1980.
*347 John L. Lanier, of Pugh, Lanier & Pugh, Thibodaux, for Donald J. Kraemer.
Terrence O'Brien, of Monroe & Lemann, New Orleans, for Louisiana Power & Light Co.
Before COVINGTON, CHIASSON and LEAR, JJ.
COVINGTON, Judge.
Defendant, Louisiana Power & Light Company, appeals from a judgment awarding plaintiff, Donald J. Kraemer, total and permanent disability workmen's compensation benefits, penalties of 12% on past due payments and attorney's fees. Plaintiff has answered the appeal, seeking an increase in the attorney's fees because of the appeal.
On appeal, the defendant makes one basic contention, that the trial court erred in awarding total permanent disability as opposed to partial permanent disability.
The evidence adduced at the trial consists of the testimony of the plaintiff, his wife, his nephew and the depositions of two medical doctors. The defendant offered the testimony of an employee in its personnel department and joined in the offer of the deposition of one of the doctors, Dr. Landry. The defendant also filed medical reports from the two doctors. The trial court found that plaintiff's disability was due to his inability to perform any work without substantial pain.
Mr. Kraemer was employed as a lineman by the defendant, and had worked for the company about 12 years at the time of his injury on July 29, 1977. He was hurt as he climbed out of a basket, on a basket truck, in the course and scope of his employment with Louisiana Power & Light Company. Following his injury, Kraemer was seen by Dr. Richard Landry, an orthopedist in Houma, *348 Louisiana, who diagnosed his condition as "a large disc rupture at L-4, 5 and a small one at L-5, S-1." A double laminectomy was performed by Dr. Landry and Dr. Dexter A. Gary on August 9, 1977. Kraemer was seen periodically by Dr. Landry until November 20, 1978, when he was discharged with "a 10 per cent partial physical impairment to the body as a whole." Dr. Landry testified in his deposition that between the time of the injury and the time of his discharge, Kraemer was unable to return to his job as a lineman or to do heavy manual work. Dr. Landry stated that he never advised the defendant that Kraemer was "able to return to his former vocation." Dr. Landry's testimony corroborated Kraemer's complaints of pain. Kraemer underwent physical therapy for about one year and wore a back brace for about six months; yet, he continued to suffer pain. Even light household chores aggravated his condition. The testimony of the plaintiff and his wife shows that he continued to have considerable difficulty and pain with his back following his discharge by Dr. Landry. Kraemer testified that his back gets stiff and hurts when he remains in a standing or sitting position over any extended period of time. The trial judge noted that while testifying, the plaintiff was obliged to stand from time to time to relieve the discomfort and pain in his back. Kraemer also testified that riding in an automobile for a long period of time aggravated his condition. His testimony was supported by that of his nephew, Ray Kraemer, that the plaintiff was unable to do any work involving strenuous activity.
Plaintiff was also examined by Dr. Homer Kirgis, a neurosurgeon at Ochsner Clinic, in June of 1979, when he continued to suffer with his back. The pain was compatible with Dr. Kirgis' objective findings. He indicated that Kraemer would not be able to return to work as a lineman for defendant. He further testified that the healing process in such cases depends upon the particular individual, and that if the back pain persisted, a spinal fusion may become necessary. Dr. Kirgis stated in his deposition:
"A. I would be opposed to his attempting to lift objects weighing sixty pounds, and he shouldn't lift objects weighing fifty pounds very often, very frequently, but he should limit his lifting to objects of twenty-five to thirty pounds, and it's important for patients of this type to avoid stooping as much as they can. If they wish to lift anything from the floor, including newspaper, they should squat to pick it up instead of stooping to pick it up.
Q. Doctor, let us assume that prior to his accident in July of 1977 that Mr. Kraemer worked as a lineman for Power & Light Company, a job which required him to climb poles, to carry heavy objects, to do generally fairly heavy manual labor. As of the date of your examination on June 25th, 19, excuse me, on June 13th, 1979 did you believe that Mr. Kraemer was in condition to engage in such an occupation at that time?
A. No, sir.
Q. Dr. Kirgis, as you indicated, Mr. Kraemer was complaining to you that if he tried to perform any light work around his home, even for a few hours, he developed a marked return of pain and disability and discomfort in his back. Were those complaints compatible with the findings which you had in your examination of him?
A. Yes, sir.
Q. Was this due to the instability which you found in his back?
A. Yes, sir.
Q. Doctor, do you believe that Mr. Kraemer at this time or at the time of your examination could have returned to any sort of gainful employment where manual labor was involved?
A. I don't think he could have continued to work sufficiently long hours that any employer would hire him.

*349 Q. Doctor, insofar as his problems with his back, do you classify his problems to be mainly brought about by the instability of his back?
A. Well, they were brought about by the ruptured discs. But the problem as of time of my examination was instability or weakness of his spine. The muscles are not weak, but the spine is weak. The back is structurally weak.
Q. Is this the reason why you recommend to him that he wear back support when doing such things as taking long automobile ride or trying to do any manual activity?
A. Yes, sir. You see the man will improve if scar tissue builds up around these injured discs to strengthen that part of the spine, and this will progress to an effective level if he doesn't put undue stress in his back periodically and disrupt the process. The process can be protected by his avoiding stooping, wearing the back support, and so forth.
Q. Doctor, how long generally does it take for this to occur?
A. It varies in every individual. He's forty-two years of age. This would progress moderately fast, but it varies in every case, and this can be determined only by periodic examination.
Q. Can you give us perhaps a general range when you would normally expect such a healing process to be accomplished?
A. Well, if Mr. Kraemer doesn't repeatedly aggravate the symptoms by attempting to do too much work too soon, I would be hopeful that he would be able to perform some kind of light work in approximately a year from the time of my examination.
Q. In other words, Doctor, you believe that it would be at least a year before he could do any kind of light work even without running the risk of further difficulties with his back?
A. Judging from the history that I obtained I think so.
Q. Now, when you talk about perhaps in a year he might be able to return to some type of light work, what do we mean by light work. Now what would you allow him to do?
A. I would be in agreement with his obtaining a position on a security force if he were not expected to perform too much, too many activities requiring a great deal of physical exertion.
Q. In other words, you would suggest that perhaps he could work as some sort of security officer?
A. Yes.
Q. Do you think he'll ever be able to return to any sort of job involving manual labor?
A. I think he might be able to perform light manual labor, but he should not attempt to return to work that would be classified as heavy manual labor.
Q. Doctor, the disability which you found in Mr. Kraemer on the date of your examination, do you attribute it to the disc injury which he sustained in July of 1977 and the resulting instability following the surgical removal of these ruptured discs?
A. If the history was accurate, I would do so.
Q. And you consider him as being unable to return to his former occupation as of the date of your examination?
A. Yes, sir."
Considering the foregoing evidence, the trial court concluded that under the facts and circumstances of the instant case, the plaintiff could only return to work in substantial pain; consequently, he was totally and permanently disabled within the meaning of the workmen's compensation law, as amended by the 1975 Act.
*350 As a matter of law, an injured employee who is able to work, but only in substantial pain, is totally and permanently disabled and entitled to the benefits conferred by LSA-R.S. 23:1221(2); Whitaker v. Church's Fried Chicken, Inc., 387 So.2d 1093 (La.1980, No. 65401). However, the determination of the degree of pain is a factual determination; the conclusion reached depends to a great extent on an evaluation of the plaintiff's credibility, because in the final analysis the plaintiff is the only one capable of describing his pain. See Wilson v. Ebasco Services, Inc., 386 So.2d 371 (La.App. 4 Cir. 1980); Holmes v. Morville Plantation, Inc., 314 So.2d 752 (La. App. 4 Cir. 1975).
Thus, the essential question in cases of this nature is whether the injured employee's pain is substantial enough to be considered disabling.
In Rachal v. Highlands Insurance Company, 355 So.2d 1355 (La.App. 3 Cir. 1978), writ denied, 358 So.2d 645 (La.1978), the Court construed LSA-R.S. 23:1221, as amended by Act 583 of 1975, to mean that an injured employee is considered totally and permanently disabled "if he is unable to pursue any gainful employment without experiencing substantial pain." We agree with this construction of the amended statute.
In Simmons v. State, Department of Transportation and Development, 368 So.2d 770 (La.App. 2 Cir. 1979), the plaintiff sustained a protruded disc while pushing a cart loaded with samples of concrete. Two orthopedic surgeons testified that the plaintiff was capable of doing light work which did not require heavy lifting, pushing or bending, but that prolonged sitting or standing would cause substantial pain. The plaintiff testified that he suffered substantial back and leg pain when sitting or standing for long periods of time. His wife corroborated his testimony, explaining that he would have substantial back pain even upon doing light household chores. The Simmons Court held that an injured employee who endured substantial pain when engaged in any gainful employment was totally and permanently disabled just as though he was incapable of performing any work at all. The Court pointed out that the reason for this conclusion is that an employee is not required to work in substantial pain and he is not to be penalized when he does so work or tries to work. This jurisprudential rule was not changed by the 1975 Amendment to the Louisiana Workmen's Compensation Act. See Phillips v. Dresser Engineering Co., 351 So.2d 304 (La. App. 3 Cir. 1977), writ denied 353 So.2d 1048 (La.1978).
In the instant case the trial judge had no difficulty in concluding that the plaintiff's pain was substantial. The plaintiff testified to the severity of his pain; his testimony was corroborated by that of his wife and his nephew; and the orthopedist and the neurosurgeon testified that the pain which the plaintiff described was consistent with their medical findings. As indicated above, whether the pain is "substantial enough" is a question of fact to be determined by the trier of fact. Such determination of fact will not be disturbed on appeal when there is evidence before the trier of fact which upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for such findings, unless such findings are clearly wrong. Crump v. Hartford Accident and Indemnity Company, 367 So.2d 300 (La.1979).
After our careful consideration of the evidence, we do not find manifest error on the part of the trial court in determining that the plaintiff was totally and permanently disabled. The evidence that Kraemer was in substantial pain when he performed any strenuous activity greatly preponderates. A finding of "substantial pain" requires a holding that the plaintiff is disabled from work. See Whitaker v. Church's Fried Chicken, Inc., supra.
Regarding the claim for penalties and attorney's fees, the trial court found that the Company had been arbitrary and without probable cause in terminating Kraemer's workmen's compensation benefits, thus entitling him to penalties and *351 attorney's fees. The basis for the lower court's decision on this question is stated as follows in the trial judge's written reasons for judgment:
"Louisiana Power & Light Company terminated Mr. Kraemer's benefits on or about November 30, 1978 following Dr. Landry's report of November 20, 1978.
"Dr. Landry deposed that:
"(1) That as of November 20, 1978 Mr. Kraemer was 10% partially physically disabled;
"(2) That the letter of his findings to L.P. & L. never indicated that Mr. Kraemer was capable of returning to his former occupation;
"(3) That he never at any time indicated to L.P. & L. that Mr. Kraemer could return to his former occupation.
"L.P. & L. had no definite expression from Dr. Landry or any other doctor that Mr. Kraemer's disability had ended. Further, L.P. & L. did not inquire into the condition or progress of Mr. Kraemer before arbitrarily terminating his compensation payments. Under the facts of this case claimant is entitled to statutory penalties and reasonable attorney fees.
"The Court finds that attorney fees of $2,500.00 would be appropriate in this case considering the degree of skill exhibited and the volume of work performed in prosecution and collection of this claim. The evidence reflects that Mr. Kraemer did not receive workmen's compensation for approximately thirty-eight weeks, a total of $3,610.00 in weekly benefits. At the statutory rate of 12%, this amounts to a penalty of $433.20."
LSA-R.S. 23:1201.2 provides that any employer who discontinues payment of workmen's compensation benefits shall be liable for penalties and attorney's fees "when such discontinuance is found to be arbitrary, capricious or without probable cause."
The record reflects no evidence which justified the employer in discontinuing payments to the injured employee herein. Clearly, the employer was arbitrary, capricious and without probable cause in terminating the benefits. Accordingly, we affirm the award of penalties to the plaintiff. See Lachney v. Cabot Corporation, 368 So.2d 500 (La.App. 3 Cir. 1979), writ denied 371 So.2d 834 (La.1979).
Plaintiff has answered the appeal, seeking additional attorney's fees for the appeal. His request is granted. The appeal has necessitated additional work on the part of his counsel. Under the circumstances, we have concluded that an additional award in the amount of $1,000.00 should be made for attorney's fees. See Horn v. Vancouver Plywood Company, 322 So.2d 816 (La.App. 3 Cir. 1975).
It is therefore ordered, adjudged and decreed that the judgment of the trial court is amended to increase the award for attorney's fees to the sum of $3,500.00 and, as amended, the judgment is affirmed. Costs of the appeal are taxed against the appellant, Louisiana Power & Light Company.
AMENDED AND AFFIRMED.