401 So.2d 658 (1981)
Geraldine LASTRAPES, Plaintiff-Appellee,
v.
CNA INSURANCE CO., Defendant-Appellant.
No. 8313.
Court of Appeal of Louisiana, Third Circuit.
June 30, 1981.
Rehearing Denied August 13, 1981.
*659 Lewis & Lewis, Gina B. Tuttle, Opelousas, for defendant-appellant.
Morrow & Morrow, J. Michael Morrow, Opelousas, for plaintiff-appellee.
Before CULPEPPER, FORET and LABORDE, JJ.
LABORDE, Judge.
In this workmen's compensation suit, plaintiff, Geraldine Lastrapes, alleges she suffered a back injury while in the course and scope of her employment as Director of Nurses at St. Luke's General Hospital. Alleging further that she is unable to perform all of her duties and that she has been working in substantial pain, plaintiff seeks permanent and total disability benefits from the hospital's compensation insurer, American Casualty Company.[1]
After a trial on the merits, the court found that plaintiff was injured within the course and scope of her employment and that she is performing her duties in substantial pain. On that basis, the judge found plaintiff to be permanently and totally disabled and fashioned an award accordingly. The judge also awarded penalties and attorney's fees.
Defendant appeals and alleges as trial court errors the court's finding that plaintiff proved her back injury occurred while in the course and scope of her employment and its finding that she now works in substantial pain. Defendant also contests the lower court's finding that it acted arbitrarily and capriciously in refusing to pay plaintiff's *660 medicals. Plaintiff answers on the appeal requesting an increase in attorney's fees.
Upon our review of the record, we find evidence sufficient to support the trial court's finding of plaintiff's permanent and total disability. However, in light of recent jurisprudence, we feel defendant is entitled to an opportunity to reduce the award of plaintiff's benefits to partial disability by presenting evidence that some form of gainful occupation is regularly and continuously available to plaintiff within a reasonable proximity to her residence. For that purpose, we must remand.
In order to recover benefits under Louisiana's Workmen's Compensation Law, an employee must establish that he received a personal injury by accident arising out of and in the course of his employment. The first issue is whether plaintiff established a work-related injury.
Plaintiff is a thirty-seven year old registered nurse who is Director of Nurses at a small, rural hospital in Arnaudville, Louisiana. She testified that she injured her back on or about April 26, 1979, while carrying a projector from her office to the hospital's dietary department. This occurred on a Thursday. Plaintiff states that throughout the day, she experienced pain in her lower back radiating into her right leg. Nevertheless, she continued to work that day and the rest of the week. It was not until the weekend that the pain became so intense that plaintiff complained about it to her husband and also related the incident to him.[2] Due to the pain, plaintiff was able to work on Monday only of the following week. The pain continued and a doctor friend of plaintiff's arranged for her to see Dr. Charles Olivier, an orthopedic surgeon. After several office visits, plaintiff was admitted into a Lafayette hospital. A myelogram was done by Dr. Laborde. It showed plaintiff as having smooth, round defects (bulging discs) along her back at L-2,3; L-3,4; and L-4,5. The pain continued and plaintiff was referred to Dr. Stephen Goldware, a neurosurgeon. Dr. Goldware concurred in Dr. Olivier's findings.
Defendant, in brief, points to what it feels are several inconsistencies in plaintiff's account of her injury as well as to additional facts which it feels tends to discredit plaintiff's claim. Because we feel the record as a whole supports the trial court's finding, we see no need to elaborate upon these alleged inconsistencies. We note only that the trial court, after hearing the evidence and viewing the witnesses, found that plaintiff established a work-related injury. We agree with the trial court that under the facts presented, plaintiff adequately discharged her burden. We will therefore not disturb this finding on appeal. Crump v. Hartford Accident & Indemnity Company, 367 So.2d 300 (La.1979).
Defendant next contends that plaintiff failed to prove that she is now in substantial pain or that she is disabled within the meaning of the compensation law.
Louisiana R.S. 23:1221 provides:
"Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
(2) For injury producing permanent total disability of an employee to engage in any gainful occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee, at the time of injury, was particularly fitted by reason of education, training, and experience, sixty-six and two-thirds per centum of wages during the period of such disability."
There has been a recent surge of jurisprudence interpreting this statute and, more importantly for our purposes, relating an employee's claim of working in substantial pain to the workmen's compensation scheme. In the most recent case of Lattin v. Hica Corporation, 395 So.2d 690 (La. 1981), the Supreme Court stated:

*661 "A worker who cannot return to any gainful employment without suffering substantial pain is entitled to compensation benefits for total disability. Wilson v. Ebasco Services, Inc., 393 So.2d 1248 (La.1981); Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La.1980); Whitaker v. Church's Fried Chicken, Inc., 387 So.2d 1093 (La.1980). Substantial pain cases may also be analyzed within the framework of the odd lot doctrine which was adopted by this court in Oster v. Wetzel Printing, Inc., 390 So.2d 1318 (La.1980). See Wilson v. Ebasco Services, Inc., supra; Calogero v. City of New Orleans, 397 So.2d 1252, (La.1980); Dusang v. Henry C. Beck Builders, Inc., supra.

Under the odd lot doctrine, a claimant is considered totally disabled if his injury makes him an odd lot in the labor market, that is, one capable of obtaining employment periodically but one whose services are so limited in quality, dependability or quantity that a reasonably stable market for his services does not exist. An odd lot claimant need not be absolutely helpless to qualify for total disability. If the claimant can prove that his physical condition, mental capacity, education, training age or other factors combined to place him at a substantial disadvantage in the competitive labor market, he has made out a prima facie case for classification in the odd lot category. This satisfies his burden of proving that he should be awarded benefits for permanent and total disability. The employer or insurer must then show that some form of gainful occupation is regularly and continuously available to the employee within reasonable proximity to the employee's residence.
The odd lot doctrine is also applicable to substantial pain cases because a worker who, due to his injury, can function only with substantial pain or with the help of fellow workers may not be considered a particularly desirable employee. Thus, if a claimant's pain appreciably limits the types of work available to him and greatly diminishes his ability to compete in the labor market, he can be treated as an odd lot worker and be awarded total disability, unless there is proof that jobs are realistically available to him. On the other hand, if a worker cannot perform the same work that he did before his injury because it causes him substantial pain, but he has the mental capacity to perform other jobs which are available, he should be considered partially disabled. Dusang v. Henry C. Beck Builders, Inc., supra."
In the instant case, plaintiff adequately established that she suffers from substantial pain while performing her duties at the hospital. She concedes that while there are days when she does not hurt, most of the time she is in pain and occasionally she has to miss work on that account. She shows that her job as Director of Nurses requires a lot of sitting to fulfill her duties of arranging schedules, attending meetings, and so on and that prolonged sitting aggravates the pain. She also shows that because the hospital is a small, rural one, with limited registered nurses, she is often times summoned to floor duty and is required to perform the tasks of an R.N. She claims that the extra walking, bending, and standing motions also aggravate her condition.
The trial court expressly found that plaintiff was working in substantial pain. Upon our review of the record, the preponderance of the testimony, medical and lay, and the credibility of plaintiff are sufficient to support this determination.
In light of the above principles, we must also review the record to determine whether plaintiff had made a prima facie showing that her pain appreciably limits the types of work available to her and greatly diminishes her ability to compete in the labor market.
The record reveals that plaintiff graduated from nursing school and is a registered nurse. Thus, we are unable to say that plaintiff is uneducated. Yet, her education is a specialized one as are her skills. As seen from the testimony elicited, her back *662 injury prevents or hampers her from performing the ordinary services required of her. For example, the evidence reveals that plaintiff attempts to find other nurses to do particular things or tasks for her at the hospital that she once did prior to her back injury.
In addition, the record shows that plaintiff's husband, James Lastrapes, is the Administrator of the hospital. He is also Secretary of its Board of Directors. These factors suggest to this court that the hospital may be attempting to accommodate plaintiff by retaining her.
Based on the above, we feel plaintiff has proved that her substantial pain places her are a disadvantage in the competitive labor market. Thus, we conclude that she has made out a prima facie showing for classification in the odd lot category. This satisfies the burden of proving she is entitled to benefits for permanent and total disability. The defendant must now show that some form of gainful employment is regularly and continuously available to her within reasonable proximity to her residence.
Our ruling requiring remand pretermits the need for a discussion of penalties and attorney's fees.
For the above reasons, the judgment of the trial court is set aside and the case remanded to the district court for further proceedings consistent with this opinion. Costs of this appeal are assessed against defendant.
SET ASIDE; AND REMANDED.
FORET, J., concurs.
CULPEPPER, J., concurs in the reversed and assigns reasons.
CULPEPPER, Judge, concurring in part.
I concur in the majority holding that the trial judge was not clearly wrong in his finding of fact that plaintiff suffered a job-related accident. However, I think the defendant had just cause to question the occurrence of the accident, and that therefore defendant was not arbitrary or capricious in refusing to pay benefits.
The following evidence shows there was a serious question as to the accident. Plaintiff contends that on Thursday, April 26, 1979 she injured her back while carrying a movie projector which weighed about 30 pounds. The first thing which makes the accident questionable is that she admittedly continued to work on Thursday, April 26 and Friday, April 27. She was off on Saturday, April 28. The first time she told anybody about the accident was on Sunday, April 29. She says that on Sunday her back pain became much worse at home and she told her husband, who is the hospital administrator. Nevertheless, she worked on Monday, April 30, Plaintiff testified she talked to a Dr. Morrow at the hospital briefly, and he advised her to see Dr. Charles Olivier, an orthopedist in Lafayette. She first saw Olivier on May 9, 1979. In giving Dr. Olivier her history, she stated she had episodes of back pain since high school, and that her back had started hurting badly about six weeks before. Of course, six weeks before May 9 would have put the date of injury before the alleged accident on April 26. Furthermore, in her history given to Dr. Olivier, she denied that she had suffered an injury. This may have been a misunderstanding by Dr. Olivier of plaintiff's statements to him, but, nevertheless, it raises a question as to whether there had been an accident.
Mr. Neal Durio, the insurance agent who handles the hospital's coverage, testified he thought there would be a question about an accident, because plaintiff could not "pinpoint" a specific time when the injury occurred. Peggy Robin, one of Durio's employees, stated she obtained from Mr. Lastrapes the information to fill out the employer's first report of injury, which was dated May 15, 1979, about 19 days after the alleged accident on April 26.
Mitzi Melancon, the insurance adjuster for the defendant, testified they initially paid about $305 of medical expense, but then she recommended no further payment *663 be made because of the serious questions regarding the accident. The questions as to the accident stated by Ms. Melancon are: (1) Plaintiff admittedly had pre-existing back disease since high school. (2) Plaintiff could not point to any exact time when the accident occurred. (3) There were no other witnesses to the accident. (4) The date of the accident given in the employer's first report, i. e., April 26, conflicted with the history given to Dr. Olivier that plaintiff's back started hurting about six weeks before May 9. (5) In her history to Dr. Olivier, plaintiff said she had not suffered an injury. I would hold there are sufficient questions about the accident that penalties and attorney's fees should be denied.
Furthermore, I can agree with the majority that the accident, i. e., the aggravation of plaintiff's pre-existing back disease, caused her to be totally disabled for a certain period of time. However, it is my view the evidence shows plaintiff is no longer totally disabled. Reviewing briefly the expert medical testimony, Dr. Olivier saw plaintiff from May 9, 1979 until June 1, 1979. Based on the myelogram which he ordered and other examinations, he diagnosed herniated discs at L2-3, 3-4 and 4-5, the most pronounced being at 4-5. It was his opinion that plaintiff had aggravated this condition causing pressure on the right leg sciatic nerve. Since plaintiff was still complaining of pain the last time Dr. Olivier saw her, June 1, 1979, he referred her to Dr. Stephen Goldware, a neurosurgeon in Lafayette.
Goldware first saw plaintiff on August 7, 1979. He described her as being a healthy, white female, 5 feet 8 inches tall, weighing 135 pounds and at that time being 35 years of age. His August 7 examination revealed nerve root pressure from a herniated or ruptured disc at L4-5. He saw her again on November 20, 1979, and there was no change. He talked to plaintiff and her husband about treatment and even discussed the possibility of future disc surgery. However, they decided to use conservative treatment, i. e., exercise and medication for pain.
Dr. Goldware next saw plaintiff on February 15, 1980, on which date he found her to be completely asymptomatic. He explained that either the disc material or the nerve had probably moved so that there was no longer any pressure on the nerve. Dr. Goldware discharged her as being able to return to her duties as a nurse, provided she did no heavy lifting and tried to avoid remaining in the same position for prolonged periods of time. He explained to plaintiff that the chances were about 20% that she would reinjure her back within five years, and that if she did have a reinjury and the pain became so great that she could not stand it, they could do disc surgery, which is usually successful.
The time sheets filed in evidence are very confusing as to the exact number of days plaintiff had to use her sick leave because of the pain in her back. They show that during May and early June of 1979 she used about 30 days of her sick leave. But after the myelogram was performed for Dr. Olivier she went back to work on Monday, June 11, 1979 and has continued to work since that time up to the date of trial in July of 1980. She was working when she saw Dr. Goldware. Although she used all of her sick leave and in addition used some special leave which the Board of Administrators gave her, she has not lost any wages. At the time of trial, she had worked for over a year at the same job for the same wages as before the accident.
As the majority states, plaintiff testified she still has back and leg pain at work on most days but not every day. The activities which cause her pain are sitting in one position for long periods of time, which she has to do in keeping records, or prolonged walking or pending. Apparently, she does not have to do any heavy lifting. The record shows that in addition to plaintiff, the hospital employs registered nurses for each of the three shifts, and also practical nurses, aides and orderlies who do the lifting.
*664 Plaintiff has not seen a doctor about her back since Dr. Goldware discharged her in February of 1980.
It is my view that even assuming the trial judge was not clearly wrong in his finding of fact that plaintiff works in substantial pain, there is sufficient evidence in the record to show that she does not fall within the odd lot category as defined in the Dusang and Lattin cases cited in the majority opinion. The strongest evidence that gainful employment is regularly and continuously available to plaintiff is the fact that she has worked for over a year as the director of nurses at the hospital, the same job she had at the time of the accident. In addition, plaintiff's husband, the administrator of the hospital, testified that there is a shortage of nurses in the Arneaudville area, and that the hospital has difficulty employing sufficient registered nurses. I see no need to remand this case to the district court for additional evidence on the question of whether plaintiff is an odd lot employee. Clearly, she is not.
Summarizing, I can agree with the majority that there was an accident causing total disability for a short period of time during which plaintiff had to use her sick leave, and that she is entitled to weekly benefits for the period she used her sick leave. However, I would find plaintiff is not entitled to benefits after she returned to work on June 11, 1979. And, in view of the serious questions as to the accident, I would find plaintiff is not entitled to penalties or attorney's fees.
NOTES
[1] Although originally sued as NCA, defendant thereafter is referred to and refers to itself as American Casualty Company.
[2] As will be explained more fully later in this opinion, plaintiff's husband, James Lastrapes, is the Administrator of the hospital where plaintiff is employed.