426 So.2d 741 (1983)
Geraldine LASTRAPES, Plaintiff-Appellee,
v.
CNA INSURANCE COMPANY, Defendant-Appellant.
No. 82-494.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1983.
*742 Guglielmo & Lopez, James Lopez, Opelousas, for defendant-appellant.
Morrow & Morrow, J. Michael Morrow, Opelousas, for plaintiff-appellee.
Before STOKER, YELVERTON and KNOLL, JJ.
YELVERTON, Judge.
This worker's compensation case is before us on appeal for the second time. The first appeal resulted in a remand, 401 So.2d 658.
In the present appeal we are concerned with only two issues: (1) whether on remand defendant has shown that some form of gainful employment is regularly and continuously available to plaintiff within reasonable proximity to her residence, and (2) penalties and attorney's fees.
On the first appeal a different panel of this court affirmed the finding of the trial court that plaintiff suffered a job-related accident which rendered her totally and permanently disabled. Further, the majority of that panel concluded that plaintiff had proved that substantial pain placed her at a disadvantage in the competitive labor market, and that she had therefore made out a prima facie showing for classification in the odd lot category. The remand was for the purpose of giving defendant the opportunity to show that some form of gainful employment was regularly and continuously available to plaintiff within reasonable proximity to her residence, considered by the majority of that panel to be mandated by Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La.1980). Because of its determination that a remand was necessary, this court on the first appeal did not consider the appeal from the award of penalties and attorney's fees.
Although the facts regarding the already determined issue of permanent and total disability are fully reported at 401 So.2d 658, for the sake of convenience we will briefly reiterate the facts before considering the specific issues before us.
Plaintiff, Geraldine Lastrapes, was a registered nurse employed at St. Luke's General Hospital, a small, rural hospital in Arnaudville, Louisiana. Her husband was the administrator of the hospital and also the secretary of the Board of Directors. Ms. Lastrapes injured her back on April 26, 1979. An orthopedist diagnosed the injury as a bulging disc; a neurosurgeon, a ruptured disc. The pain factor was found and affirmed to be substantial. Although she *743 lost some time from work, plaintiff never stopped working. Because of the peculiar relationship that she and her husband had with the hospital, plaintiff's needs were accommodated; in the words of the trial court, she "works when she can and quits as she wishes". Prolonged sitting, prolonged standing, extra walking, and bending aggravated the otherwise rather constant pain.
The above are established facts already examined on the first appeal and we will now consider the issues before us following remand.

Proof of Other Employment Opportunities
To show that some form of gainful employment was regularly and continuously available to plaintiff within reasonable proximity to her residence, defendant offered one witness. He was Curtis Charrier, a vocational consultant. He described his job as determining what residual functional capacity a handicapped person has, based on considerations of age, education, work history, and the medical evidence. His function also involved making job market surveys to determine job availability. It was his opinion, after having read the entire record at the first hearing, including the medical depositions, that there were nursing jobs plaintiff could still do. She could work in a hospital blood bank as a blood bank nurse, because these nurses stand and sit alternately, and walk around. Or, she could be a doctor's office nurse, which again requires standing and sitting alternately, and some walking. She could do these things in Arnaudville. In nearby larger hospitals in Lafayette, she could be a clinical instructor of nurses, qualified by her eight or nine years experience as a Registered Nurse. Or, she could do private duty nursing of the "sitter" variety. She could do insurance physicals for private firms because this involves taking blood pressure and asking questions, and an occasional short drive out of the office, and it also involves alternate standing and sitting. He thought there were some of these jobs open in Lafayette.
Also, according to this witness, plaintiff could be a self-service gasoline station cashier, or a restaurant cashier, or a hotel desk clerk, or a cashier in a clothing storeall of which require sitting and standing alternately, and some walking around. Charrier testified that there were job openings in the Arnaudville-Lafayette area for some of these described employment opportunities.
Plaintiff testified again on remand and repeated substantially what she had said at the first trial. She has continued to work at St. Luke's with fair regularity. However, she works pretty well on her own schedule. If she hurts too much to go to work, she does not go. If she needs to rest at work, she does. If she needs to go home, she goes home.
Based on the testimony on remand, the trial court concluded that defendant had failed to prove that plaintiff could perform any of the described job opportunities without suffering substantial pain. We agree.
What primarily distinguishes Mrs. Lastrapes' present employment situation is that she is virtually free to subordinate her job responsibilities and her working hours to the exigencies of her physical problem. In none of the other job opportunities described by the expert was this degree of independence from job responsibilities or schedule taken into account. The employer failed to prove that any job was available to Ms. Lastrapes that would enable her to delegate responsibilities at will, call for assistance when needed, elect not to report to work, take an impromptu rest, or spontaneously leave the job and go homeall of which are privileges she enjoys without restriction in her present employment.
We therefore conclude, as did the trial court, that defendant has failed to rebut the prima facie showing of odd lot categorization.
We turn now to the remaining issue, penalties and attorney's fees.

Penalties and Attorney's Fees
At the initial trial the district court found that the failure of the defendant to pay compensation benefits and medical expenses *744 was arbitrary and awarded penalties and attorney's fees in the amount of $5,000. After remand the trial court increased attorney's fees to $6,000. Appellee has answered the appeal seeking an increase in this award. Appellant urges that penalties and attorney's fees should be disallowed entirely, adopting as its reasons the concurring opinion of one judge of the appellate panel which originally heard this case, 401 So.2d, at 662.
A number of medical bills were paid by the insurer following the injury through June 18, 1979. After that date a new claims representative, Mitzi Melancon, took over for the defendant insurer and no further medical expenses were paid. No compensation benefits have ever been paid.
The employer's first report of injury was dated May 15, 1979, and received by the insurer on May 17. At the trial Ms. Melancon testified as to her reasons for discontinuing the payment of medical and refusing to commence compensation. One was that a witness whose name appeared on the employer's first report of the accident did not in fact witness the accident. This can hardly be relied on as proof that the accident did not happen. All it means is that the named witness was not in fact a witness. We find abundant evidence in the record available to Ms. Melancon at that time which supports a finding that an accident did happen.
Another factor Ms. Melancon testified that she relied on was a number of discrepancies concerning the date of the onset of pain and pre-existing disability as reported by Dr. Olivier. The report to which Ms. Melancon referred was a report styled "Disability Claim Report" submitted by plaintiff and in part filled out by Dr. Olivier as attending physician, and signed by him. This report, dated September 15, 1979, and received by the insurer on September 17, 1979, indicated that plaintiff was totally disabled for one month and that even then she could only return to light duty. The only reference that the doctor's portion of this report makes as to the date of the injury is the notation that it was "unknown".
A careful reading of the record shows that while Ms. Melancon was purportedly testifying from this report, what she was actually referring to were some statements taken out of context from Dr. Olivier's deposition taken almost a year later and after suit was filed. She was reading into the report of September 1979 information that could not have been known to her until after June 20, 1980, the date of Dr. Olivier's deposition. By that time the fact of an accident was no longer an issue; the focus of attention was then on the extent of disability.
Finally, Ms. Melancon testified that she had no proof of disability and was awaiting lost-time records from plaintiff's employer. However, there was testimony that the time records were supplied to her first over the telephone, which she admitted receiving, and later in writing. Moreover, the report of Dr. Olivier in September, 1979, on which Ms. Melancon relies, establishes that plaintiff would be unable to return to the full duties of her employment for an uncertain period of time.
A trial court's determination that a refusal to pay benefits is arbitrary, capricious and without probable cause is partially a factual determination which will not be disturbed in the absence of manifest error. Lofton v. Louisiana Pacific Corporation, 410 So.2d 1171 (La.App. 3rd Cir.1982). Moreau v. Houston General Ins. Co., 386 So.2d 151 (La.App. 3rd Cir.1980). We find no manifest error in the trial court's conclusions that the insurer was arbitrary and capricious in terminating medical benefits and in failing to commence the payment of compensation benefits, and we affirm the award of penalties and attorney's fees.
The award of attorney's fees was originally $5,000 following the initial trial. After the hearing on remand, the trial court increased the award to $6,000. This was proper and reasonable.
In addition, we will award $1,500 for attorney's fees occasioned by the two appeals required herein.
*745 Summarizing, we find that the defendant on remand failed to show that some form of gainful employment is regularly and continuously available to plaintiff within reasonable proximity to her residence, and therefore her odd lot status remains unchanged from our findings on the initial appeal. We affirm the trial court's determination that the defendant insurer was arbitrary and capricious in its termination of medical benefits and failure to pay compensation benefits, and affirm the award of $6,000 in attorney's fees, and we amend the award of attorney's fees by increasing that award by an additional $1,500 to cover attorney's fees for the two appeals.
AMENDED, AND AS AMENDED, AFFIRMED.