445 So.2d 490 (1984)
Nelda REYNOLDS, Plaintiff-Appellee,
v.
WAL MART STORES, INC., Defendant-Appellant.
No. 15908-CA.
Court of Appeal of Louisiana, Second Circuit.
January 16, 1984.
*492 Lunn, Irion, Switzer, Johnson & Salley by Frank M. Walker, Jr., Shreveport, for defendant-appellant.
Watson, Murchison, Crews, Arthur & Corkern by Ronald E. Corkern, Jr., Natchitoches, for plaintiff-appellee.
Before HALL, MARVIN and SEXTON, JJ.
SEXTON, Judge.
Plaintiff brought an action in workers' compensation against defendant for disability benefits, statutory penalties, and attorney's fees. The trial court awarded plaintiff total and temporary disability benefits, statutory penalties and attorney's fees. We amend, and as amended, affirm the trial court's decree.
Plaintiff in this cause is Nelda Faye Reynolds, a 32-year old white female who lives outside Mansfield, Louisiana. Defendant herein is Wal-Mart Stores, Incorporated, a foreign corporation authorized to do business in Louisiana (hereinafter referred to as Wal-Mart).
Ms. Reynolds began working for Wal-Mart in November of 1981, at its Mansfield outlet. She was employed to manage several departments, and her duties encompassed the management of the garden center, and the artificial flowers, home furnishings, and pet departments. In the discharge of her duties, Ms. Reynolds was required to implement mark-ups and markdowns; lift, carry and shelve merchandise; arrange sales displays; and maintain the cleanliness and order of her departments.
The work accident which precipitated the instant suit occurred on Thursday, July 8, 1982. At that time, plaintiff was working 40 hours a week, at the rate of $3.85 per hour. On that date, Ms. Reynolds was moving a vertical stack of five or six curio cabinets into an aisle for the purpose of arranging the cabinets into a sales display. As Ms. Reynolds attempted to move the stack of cabinets, they began to sway and shift. In an attempt to steady the swaying cabinets, Ms. Reynolds reached out to grab them. Ms. Reynolds successfully prevented the cabinets from falling to the floor, but fell to the concrete floor in the process, striking her hands on several shelves on the way down. Plaintiffwho is left-handedinjured her left wrist and left ankle in the fall. She remained on the floor stunned for several minutes before regaining her feet.
Immediately after regaining her feet, plaintiff walked to the office of the store manager to report her injury. Ms. Reynolds's injury to her left ankle was apparent to her co-workers, who testified that she was limping and noticeably favoring one foot as she appeared at the store manager's office. However the store manager rebuked plaintiff, and according to Ms. Reynolds admonished her that "when you start doing stupid things like that it is time to go home, go punch out." Ms. Reynolds then returned to her work area to put away her marking gun, since Wal-Mart employees "were told never to leave [a] marking gun out." The store manager again chastised her, instructing her to go home.
Ms. Reynolds thereafter went directly home, and obtained the assistance of a friend to drive her to the DeSoto General Hospital in Mansfield. On the night of July 8, an emergency medical technician at DeSoto General administered a nerve conduction test on plaintiff's fingers and left hand, conducted an X-ray examination, applied a plaster splint to plaintiff's left wrist and hand, and referred plaintiff to Shreveport orthopaedic surgeon Dr. James Zum Brunnen.
The following day, Friday, July 9, plaintiff was examined by Dr. Zum Brunnen. Dr. Zum Brunnen found that plaintiff had tenderness and pain in her left wrist, and periodic numbness in the thumb and fingers *493 of the left hand. Dr. Zum Brunnen fitted plaintiff with a forearm brace, and prescribed an anti-inflammatory medication and Tylenol # 3 for her.
Dr. Zum Brunnen advised plaintiff that she should not return to work so that her condition would have ample time to improve. However, plaintiff explained to Dr. Zum Brunnen that she needed to work because her husband was disabled. Dr. Zum Brunnen then advised plaintiff to obtain a leave of absence until the following Monday, and to wear her splint when she returned to work.
Pursuant to Dr. Zum Brunnen's orders, plaintiff utilized sick leave and did not work her scheduled shifts on Friday and Saturday. Plaintiff returned to work the following Monday, July 12, wearing her splint, and informed her superiors that because of her wrist injury she was unable to discharge all of the physical tasks associated with managing four departments. Her superiors initially insisted that she would have to retain responsibility over the four departments. However, after plaintiff threatened to quit, her superiors reduced her weekly workload from forty hours to twenty hours, and relieved her of her responsibility over all departments save the pet department.
Thus subsequent to July 12, plaintiff worked 20 hours per week for several weeks under her reduced responsibilities as manager of the pet department. Her tasks as manager of that department involved manual work, and included feeding the birds, fish and animals, and cleaning their cages and aquariums.
On July 27, Ms. Reynolds returned to Dr. Zum Brunnen. Dr. Zum Brunnen noted that plaintiff had suffered severe pain in her left wrist, during the July 12 to July 27 interim, in performing the physical tasks associated with her job as pet department manager. Dr. Zum Brunnen noted that plaintiff "has kept on with her regular work but now needs to be taken off of this type work." Dr. Zum Brunnen therefore recommended that plaintiff "will either need to be completely off work or else do work just of a clerical nature."
Plaintiff returned to work with Dr. Zum Brunnen's recommendation following the July 27th medical examination, and her superiors consented to promoting her to the supervisory position of Customer Service Manager, in which position plaintiff essentially functioned as a checkout supervisor. Thus subsequent to July 27, plaintiff was relieved of the manual responsibilities she was previously charged with, and assumed a supervisory role approximately 35 hours a week as a checkout supervisor. Plaintiff acknowledged that, in relation to her former duties, her job as checkout supervisor involved "lighter work." The position of checkout supervisor entailed, more specifically, "giving out change for the cashiers, okaying the checks, and things like this which required just writing my initials on the back of Visas, Master Cards and checks."
Plaintiff's job promotion to checkout supervisor, which relieved her of the manual labor involved in managing several departments, significantly alleviated the painful wrist condition which had previously plagued her from July 12 to July 27 during the performance of manual labor. This effect was duly noted by Dr. Zum Brunnen who observed, on August 25, 1982, that plaintiff
"seems to be doing quite well as far as her wrist is concerned. She is not having pain but does have some intermittent numbness in her fingers. She has been promoted to a supervisory job and does not have to do any lifting with the arm. Has good range of motion of the wrist, no swelling. She no longer needs a wrist splint."
The condition of plaintiff's left wrist continued to improve during her tenure as checkout supervisor, although Dr. Zum Brunnen noted definite symptoms of nerve problems which might later require neurolysisremoval of the scar around the nerve.
Plaintiff's condition subsequently deteriorated to some degree, as the injury to her left anklewhich had been sustained on *494 July 8 and had previously remained relatively dormantbegan to cause her pain. Thus Dr. Zum Brunnen noted on November 17, 1982, that plaintiff registered
"complaints about the left ankle from her previous injury.... There is tenderness in the distal tibial fibular joint.... The patient may have some chronic persistance of tendonitis.... The area was injected with 1cc of Celestone Soluspan and 2cc of Xylocaine.... She was given a prescription for Tylenol # 3 for pain."
Dr. Zum Brunnen did not make any written recommendation at that time that plaintiff stop working.
Plaintiff was subsequently laid off her job at Wal-Mart on December 24, 1982. Plaintiff attributed her discharge from Wal-Mart's employ to absences that resulted from her injuries. Wal-Mart's managers testified, to the contrary, that plaintiff was laid off because of the reduced demand for retail employees subsequent to Christmas.
Plaintiff's condition continued to deteriorate, subsequent to her termination, as the injuries in both her left ankle and wrist grew increasingly painful and disabling. On December 29, 1982, Dr. Zum Brunnen observed, with respect to plaintiff's left wrist, that plaintiff
"is having symptoms of carpal tunnel syndrome on the left [wrist] with numbness in her hand, [with] pain going up her arm.... The patient's symptoms of carpal tunnel syndrome, post traumatic, have not resolved.... It may well be that she will require surgical treatment on it."
Carpal tunnel syndrome is a condition in which the median nerve which supplies sensory and motor impulses to the hand becomes abnormally constricted by the sheath of ligament through which it flows, causing pain and numbness to the wrist and hand.
Dr. Zum Brunnen, on December 29th, noted, with respect to plaintiff's left ankle, that plaintiff
"cannot stand as much as five hours a day on the left ankle because of pain.... She has tenderness anterolaterally over the ankle. Again, the ankle was injected... with 1cc of Celestone and 2ccs of Xylocaine."
Dr. Zum Brunnen found that plaintiff "is unable to work in her present condition until this problem is resolved." Dr. Zum Brunnen also stated that plaintiff "has been taken off her employment and is unable to be gainfully employed for an indefinite period of time because of wrist and ankle injuries."
Plaintiff was again seen by Dr. Zum Brunnen on January 5, 1983. Dr. Zum Brunnen noted at that time that plaintiff was still unable to work in her then existing condition, and that surgery on plaintiff's left wrist was advisable. Plaintiff was accordingly scheduled to undergo surgery on January 17, 1983, at the Physicians and Surgeons Hospital in Shreveport. However, plaintiff was refused admittance into the Physicians and Surgeons Hospital on that date because Wal-Mart declined to pay for her operation and because plaintiff herself had insufficient funds to finance the operation.
On January 18, subsequent to Wal-Mart's refusal to pay for plaintiff's surgery, plaintiff's attorney filed suit against Wal-Mart for disability benefits, statutory penalties, and attorney's fees.
On the night of February 24, the pain in plaintiff's left wrist was so severe that she went to the emergency room of the DeSoto General Hospital, was administered a muscle relaxant, a shot to kill the pain, and an additional shot of Cortisone Xylocaine directly into the inflamed left wrist. Plaintiff's severe pain continued, and at 6:00 a.m. the following day, February 25, she entered the DeSoto General Hospital and received two more injections.
These remedial measures were insufficient to staunch the pain in plaintiff's left wrist, and on the afternoon of February 25, plaintiff called Dr. Donald R. Taylor, Wal-Mart's company physician. Dr. Taylor noted plaintiff's severe pain, but Dr. Taylor deferred to the opinion of Dr. Zum Brunnen, *495 the orthopaedic surgeon, with respect to the question of whether surgery was indicated. Dr. Taylor accordingly called Schumpert Medical Center in Shreveport and requested that an orthopedist meet the plaintiff in the Schumpert emergency room on that same afternoon, February 25. Upon arriving at Schumpert on that date, plaintiff discovered that Dr. Zum Brunnen was off for the weekend. Plaintiff then returned to the DeSoto General Hospital in Mansfield at Dr. Taylor's request.
The following Monday, plaintiff conversed with Dr. Zum Brunnen over the telephone, advising him of her severely painful condition. On Tuesday, the next day, plaintiff was admitted into the Physicians and Surgeons Hospital, and Dr. Zum Brunnen performed surgery that same day. Wal-Mart had still not consented to the paying for this surgical treatment, and plaintiff obtained admission into the hospital only by writing a bad check payable to Physicians and Surgeons Hospital in the amount of $1,650.
The trial of plaintiff's claims was held on March 3, 1983. Plaintiff was still an in-patient at the Physicians and Surgeons Hospital on that date, was receiving periodic injections, and was only able to appear to testify pursuant to a temporary pass issued by the hospital.
The trial court awarded judgment in plaintiff's favor in a judgment filed May 20, 1983. The court awarded plaintiff total temporary disability benefits at the rate of $102.67 per week, from the date of her injury on July 8, 1982 "continuing through her period of disability." The trial court cast defendant Wal-Mart in judgment for plaintiff's medical treatment expense, the travel expense incurred by plaintiff in obtaining treatment, and the expert witness fees of Dr. Zum Brunnen and Dr. Tucker. The trial court additionally assessed Wal-Mart for a statutory penalty on all amounts sixty days overdue, and an attorney's fee of $5,000.
Defendant-appellant Wal-Mart contests only portions of the trial court's judgment, and has assigned three errors. Wal-Mart first contends that the trial court erred in awarding plaintiff total disability benefits for the period from July 8, 1982 to December 24, 1982, during which period plaintiff continued to work. Defendant does not complaint of plaintiff's eligibility for disability benefits subsequent to December 24, 1982, continuing through the plaintiff's disability, and this court accordingly does not consider the trial court's award of benefits to plaintiff beyond December 24. Wal-Mart contends, under its second assignment, that the trial court erred in assessing defendant for statutory penalties. Wal-Mart urges under its third assignment that the $5,000 award of attorney's fees was excessive. These three assignments will be singly considered.

Assignment I.
PLAINTIFF'S ELIGIBILITY FOR TOTAL DISABILITY BENEFITS FROM JULY 8, 1982 TO DECEMBER 24, 1982.
A worker who cannot return to any gainful employment without substantial pain is totally disabled, either permanently or temporarily. LSA-R.S. 23:1221(1), (2); Martin v. H.B. Zachry Co., 424 So.2d 1002 (La.1982); Schouest v. J. Ray McDermott & Co., Inc., 411 So.2d 1042 (La.1982); Lattin v. Hica Corp., 395 So.2d 690 (La.1981); Wilson v. Ebasco Services, Inc., 393 So.2d 1248 (La.1981); Gilcrease v. J.A. Jones Construction Co., 425 So.2d 274 (La.App. 3d Cir.1982); Johnson v. Aetna Casualty & Surety Co., 422 So.2d 1187 (La.App. 1st Cir.1982), writs denied, 429 So.2d 127 (La. 1983); Kilbourne v. Armstrong, 351 So.2d 802 (La.App. 1st Cir.1977).
However, although a claimant cannot perform his former or similar jobs because of substantial pain or disability, he is only partially disabled if he can perform gainful employment in another position. Thus, a worker is properly classed as partially disabled where, although he would experience substantial pain in performing his former job, he could work in other types of jobs without experiencing such pain. In short, partial disability exists *496 where the plaintiff cannot perform the same work as before his injury because of substantial pain, but is mentally and physically capable of performing other available jobs. LSA-R.S. 23:1221(3); Lattin v. Hica Corp., supra; Dusang v. Henry C. Beck Builders, Inc., 389 So.2d 367 (La.1980); Carter v. Pitt Grill, Inc., 425 So.2d 375 (La.App. 3d Cir.1982); Harrington v. Starline, Inc., 425 So.2d 307 (La.App. 3d Cir. 1982); Comeaux v. Cameron Offshore Services, Inc., 420 So.2d 1209 (La.App. 3d Cir.1982); Dupont v. Ebasco Services, Inc., 411 So.2d 605 (La.App. 4th Cir.1982); Kelly v. International Union Operating Engineers, 386 So.2d 1060 (La.App. 3d Cir.1980); Conlay v. Houston General Insurance Co., 370 So.2d 196 (La.App. 3d Cir.1979), writ granted, 371 So.2d 618 (La.1979); LeBlanc v. Commercial Union Assurance Co., 349 So.2d 1283 (La.App. 1st Cir.1977), writ refused, 351 So.2d 174 (La.1977). A claimant is therefore no longer totally disabled where he resumes work without substantial pain. Johnson v. Aetna Casualty & Surety Co., supra.
Although a claimant is deemed disabled when he cannot work without substantial pain, a claimant is not disabled within the intendment of the Worker's Compensation Act when he merely suffers some residual pain or discomfort when attempting to work. Pain is only disabling where it is substantial. Dusang v. Henry C. Beck Builders, Inc., supra; Gautreaux v. United States Fidelity & Guaranty Co., 422 So.2d 725 (La.App. 3d Cir.1982); Brisco v. Board of Elementary and Secondary Education, 422 So.2d 667 (La.App. 3d Cir. 1982). A claimant in compensation proceedings, like claimants in other civil proceedings, must prove his entitlement to a civil judgment by a preponderance of the evidence. Dusang v. Henry C. Beck Builders, Inc., supra; Gautreaux v. United States Fidelity & Guaranty Co., supra. Thus, substantial pain must be proved by a preponderance and to a reasonable certainty. Dusang v. Henry C. Beck Builders, Inc., supra; Brisco v. Board of Elementary and Secondary Education, supra.
Applying these standards to the instant facts, we find that plaintiff was totally and temporarily disabled from the date of her injury on July 8, 1982 to July 27, 1982. During this interim, there was not any work available to plaintiff which she could perform without incurring substantial pain. In attempting to discharge the manual duties associated with managing the pet department from July 8 to July 27, plaintiffwho was left-handedwas forced to rely heavily on the use of her injured left wrist. Plaintiff encountered substantial pain in performing these tasks. This fact was amply borne out by evidence that plaintiff used several types of pain killers during this interim; by the testimony of co-workers that she frequently complained of pain; by the inherent nature of the carpal tunnel syndrome present in her left wrist; and by the physically demanding nature of her chores. Moreover, supervisory chores not requiring manual labor were not available to plaintiff during the interim between July 8 and July 27. Despite previous requests by Ms. Reynolds, Wal-Mart had declined to promote her to a supervisory role, and the record does not reflect that Ms. Reynolds had either the education, experience or qualifications to attain a managerial placement elsewhere. During the period of July 8 to July 27, therefore, the only work available to plaintiff was work in which she suffered substantial pain. Thus, since plaintiff could not perform any available work without substantial pain during this period, she was totally disabled.
However, we find that between July 27 and December 24, plaintiff was only partially disabled. The finding that plaintiff was only partially disabled between July 27 and December 24 is principally predicated upon plaintiff's promotion from manager of the pet department to a checkout supervisor; whereas the former job required manual labor, the job as checkout supervisor was physically less demanding and more administrative in nature. The finding that plaintiff was partially disabled during this interim is predicated as well *497 upon the medical findings of Dr. Zum Brunnen during this period. Dr. Zum Brunnen's findings clearly demonstrate that the painful condition of plaintiff's left wrist was greatly alleviated from July 27 to December 24 when she was relieved of the physical duties incidental to managing the pet department. She was much improved, experiencing only residual pain and discomfort. In summary, plaintiff was prevented by substantial pain from performing her former job or similar work; however, when afforded the opportunity, plaintiff was able to perform other work with only discomfort and residual pain. Plaintiff's condition thus presents a classic instance of partial disability.
A partially disabled compensation claimant is entitled only to two-thirds of the difference between the pay he or she received prior to injury and any lesser pay he or she earns after the injury. LSA-R.S. 23:1221(3). However, upon receiving her promotion to a managerial position, plaintiff received a larger salary than she was making in the position which caused her great discomfort. Therefore, there is no "difference" since plaintiff did not earn a lesser sum; and thus no compensation is owed for this period, even though plaintiff was partially disabled for the period between July 27 and December 24.
Plaintiff's entitlement to total and temporary disability benefits subsequent to December 24 pursuant to the trial court's judgment is not disturbed, since this entitlement has not been challenged on appeal. Moreover, plaintiff's entitlement to total disability benefits subsequent to December 24 is justified since plaintiff's left ankle injurypreviously dormantwas aggravated by that time, and plaintiff's left wrist had degenerated to the point that it required surgery.

Assignment II.

PLAINTIFF'S ENTITLEMENT TO STATUTORY PENALTIES.
Wal-Mart is a self-insured employer for purposes of workers' compensation, and its liability is therefore governed by LSA-R.S. 23:1201.2. Section 1201.2 provides that an employer's failure to pay any claim due under the Workers' Compensation Actwhen such failure is arbitrary, capricious, or without probable causesubjects the employer to a 12% penalty on the amount of plaintiff's claim. In addition to disability benefits, the employer has a duty to provide medical expenses and the travel expense incurred by claimants in obtaining medical treatment. LSA-R.S. 23:1203; McElhaney v. Belden Corp., 376 So.2d 539 (La.App. 3d Cir.1979). The evaluation of an employer's failure or refusal to discharge compensation claims is based upon the facts known to the employer at the time of such refusal or failure. See Fazande v. New Orleans Public Service, Inc., 430 So.2d 225 (La.App. 4th Cir.1983); Thibodeaux v. Dresser Industries, Inc., 407 So.2d 37 (La.App. 3d Cir.1981), writ denied, 412 So.2d 85 (La.1982). A trial court's penalty determination is at least partially factual, and is not to be disturbed absent manifest error. Chapman v. Belden Corporation, 414 So.2d 1283 (La.App. 3d Cir. 1982); Stubbs v. Parish of East Baton Rouge, 343 So.2d 258 (La.App. 1st Cir. 1977), writ refused, 345 So.2d 506 (La. 1977); Panebiango v. Main Insurance Co., 293 So.2d 536 (La.App. 4th Cir.1974), app. refused, 295 So.2d 814 (La.1974).
On December 30, 1982, plaintiff's counsel made a formal, written demand upon Wal-Mart for disability benefits, and medical and travel expenses. Plaintiff herself made several demands upon Wal-Mart's compensation administrators for travel expenses. Plaintiff, her counsel, and Physicians and Surgeons Hospital all made direct requests to Wal Mart's compensation administrators to pay for claimant's surgery.
Wal-Mart's assistant store manager, who was on duty at the time of plaintiff's injury, testified that he knew both that plaintiff had fallen on the job and that she had thereby sustained a work injury. Wal-Mart's store manager conceded that Wal-Mart was liable under the Compensation Act for plaintiff's claim. Dr. Taylor, Wal-Mart's *498 company physician, treated plaintiff's left wrist injury on 19, 1982, and on that date noted that it was causing plaintiff pain. Dr. Taylor referred claimant to Dr. Zum Brunnen on that date. Dr. Taylor examined claimant on February 25, 1983, and noted that "she reported to my office complaining of quite severe pain in the left wrist, [and] had marked swelling." Dr. Taylor himself helped arrange for plaintiff to meet with Dr. Zum Brunnen on that date, so that Dr. Zum Brunnen could give plaintiff immediate treatment. Dr. Taylor deferred entirely to Dr. Zum Brunnen's determination that plaintiff's condition required surgery, and did not dispute the existence of plaintiff's injury or disability.
Dr. Zum Brunnen notified Wal-Mart in writing on July 9 that plaintiff would have to miss work for several days. On July 27, Dr. Zum Brunnen notified Wal-Mart in writing that plaintiff "will either have to be put on work not using left arm or she [should] be taken completely off work." On December 29, Dr. Zum Brunnen notifed Wal-Mart that plaintiff "is unable to work in her present condition," and "may well... require surgical treatment." On January 5, 1983, Dr. Zum Brunnen notified Wal-Mart that carpal tunnel surgery was indicated, and that "[s]he is unable to work in her present condition."
Despite formal demand and Wal-Mart's acute awareness of plaintiff's injuries, it neither investigated them nor paid plaintiff's claims. Wal-Mart expressly refused to pay for plaintiff's surgery and travel expense, and failed to pay her disability benefits. The facts adduced compel this court to conclude that the trial court correctly assessed defendant for statutory penalties.

Assignment III.

ATTORNEY'S FEES
LSA-R.S. 23:1201.2 provides for the award of attorney's fees in instances where the employer has arbitrarily and capriciously refused to pay valid compensation claims. Wal-Mart complains under this assignment that the trial court's award to plaintiff's counsel of $5,000 in attorney's fees was excessive, and constituted an abuse of discretion. Although this award may have been higher than that which would have been awarded by this court, we conclude for several reasons that this award does not represent an abuse of the trial court's broad discretion.
It is significant that plaintiff's counsel represented plaintiff at both the trial and appellate level, and further important that plaintiff's counsel ably represented her at both levels. It is especially pertinent that plaintiff's counsel was working under pressing time constraints: plaintiff's counsel was impelled to litigate plaintiff's claims and obtain benefits as rapidly as possible so that plaintiff could obtain needed surgical treatment. Moreover, great discretion is afforded the trial court in determining the amount of attorney's fees. Carter v. Roy O. Martin Industries, Inc., 336 So.2d 1002 (La.App.3d Cir.1976). Furthermore, similar awards have been granted and/or upheld in cases involving a comparable amount of legal work. See Antilley v. Sentry Insurance Co., 426 So.2d 1370 (La.App. 3d Cir.1983); Lastrapes v. CNA Insurance Co., 426 So.2d 741 (La. App. 3d Cir.1983); Fontenot v. Town of Kinder, 377 So.2d 554 (La.App. 3d Cir. 1979), writ refused, 379 So.2d 1102 (La. 1980).

SUMMARY
Thus, for the foregoing reasons we agree with the trial court in all respects except that we have determined that the plaintiff was partially disabled from July 27, 1982 to December 24, 1982 and, as such, only entitled to two-thirds of the difference between her wage at the time of injury and her wage thereafter. However, since she was making a higher wage during the period of her partial disability, she is not entitled to compensation during that period.
Therefore, the first paragraph of the judgment of the trial court ordering compensation benefits of $102.67 from July 8, 1982 through plaintiff's period of disability *499 is hereby amended such that the paragraph reads as follows:
"IT IS ORDERED, ADJUDGED, AND DECREED that there be judgment herein in favor of NELDA REYNOLDS and against WAL MART STORES, INC. for workmen's compensation benefits under the Louisiana Workmen's Compensation Statute for temporary total disability, and for partial disability, and the said WAL MART STORES, INC. is ordered to pay to NELDA REYNOLDS workmen's compensation benefits of ONE HUNDRED TWO AND 67/100 ($102.67) DOLLARS, for each weekly period from July 8, 1982 through July 27, 1982, and from December 24, 1982, continuing through her period of disability."
In all other respects the judgment of the trial court is affirmed at appellants' cost.
AMENDED, and AS AMENDED, AFFIRMED.